OPINION OF THE COURT
Pigott, J.
The primary issue presented on this appeal is whether the Workers’ Compensation Board (the Board) exceeded its statutory authority when it promulgated portions of the “Medical Treatment Guidelines” {see 12 NYCRR 324.2 [a]-[f]). We hold that it did not and therefore affirm the Appellate Division.
I
In 2007, as part of its comprehensive reform of the Workers’ Compensation Law, the legislature amended Workers’ Compensation *463 Law § 13-a (5) in two ways: (1) it raised from $500 to $1,000 the maximum cost of specialist treatments for which the employer is automatically liable without prior authorization, and (2) it directed that the Board issue and maintain a list of preauthorized procedures that a claimant can obtain at the employer’s expense even if the cost exceeds $1,000, without the need for the employer’s prior approval. The purpose of both of these provisions was to “remove impediments to prompt diagnostic and treatment measures and to better reflect current medical service costs. The provision permitting the creation of a pre-authorized list allows the Board appropriate regulatory flexibility to add or remove procedures depending on best practices, increases or decreases in costs, or opportunities presented by managed care approaches” (Governor’s Program Bill Mem No. 9, Bill Jacket, L 2007, ch 6 at 9).
A task force of credentialed medical professionals was assembled to develop and recommend a set of guidelines for the pre-authorized medical procedures.[1] In 2010, the Board published proposed regulations, which incorporated by reference the guidelines recommended by the task force. Following the comment period, the Board adopted the “Medical Treatment Guidelines,” which were subsequently incorporated by reference in the regulations (see 12 NYCRR 324.2 [a]).
The Guidelines include the list of pre-authorized medical procedures and set forth limitations on the scope and duration of each procedure. They also set forth a variance procedure, under which medical treatment providers can, on behalf of a claimant, request authorization for medical care not included in the Guidelines or in excess of the scope and/or duration that is pre-authorized (see 12 NYCRR 324.3 [a] [1]). The medical treatment provider requesting a variance must demonstrate that the requested treatment is appropriate for the claimant and medically necessary (see id. § 324.3 [a] [2], [3] [i] [a]).
II
In December 1996, claimant Maureen Kigin, a Hearing Reporter for the Workers’ Compensation Board, injured her neck and back in a work-related automobile accident. In June 1997, the Board accepted her claim for wage replacement *464 benefits and ongoing medical treatment. In 2006, Kigin’s case was reopened and transferred to the Special Fund for Reopened Cases (hereafter the carrier) pursuant to Workers’ Compensation Law § 25-a. On December 14, 2006, she was classified as permanently partially disabled.
Claimant alleges that she suffers chronic neck and back p'ain as a result of her injuries. Her treating physician, Dr. Andrea Coladner, prescribed acupuncture. On November 9, 2009, she received authorization from the carrier for acupuncture three times a week for six weeks.[2]
In March 2011, Dr. Coladner reevaluated claimant and recommended that she receive additional acupuncture treatment, namely, three acupuncture treatments to her cervical and lumbar spine each month for six months. The doctor again requested authorization from the carrier, this time under the newly-created Medical Treatment Guidelines established by the Board that had become effective on December 1, 2010. Specifically, she requested two variances, one for claimant’s cervical spine and another for her lumbar spine. These variances were required because the Guidelines for the treatment of neck injuries provided that the optimum duration of acupuncture treatments is one month and the maximum duration is 10 treatments.[3] Dr. Coladner opined that the treatments would increase flexibility, increase circulation, decrease headaches, decrease muscle tightness, and allow claimant to maintain function and activities of daily living.
In response to the variance requests, the carrier obtained an independent medical examination of claimant, conducted by Dr. Peter Chiu, a physician board-certified in physical medicine and rehabilitation and certified in acupuncture. Based on his examination, as well as his review of claimant’s medical records, Dr. Chiu determined that further acupuncture treatments were not medically necessary. Dr. Chiu noted that claimant’s subjective complaints of pain were not supported by objective findings, that she did not suffer from any disability, and that she could *465 resume normal activity of daily living and her occupation without restriction.
Based on Dr. Chiu’s findings, the carrier denied the variance requests. Claimant thereafter sought review of the denial.
Dr. Coladner and Dr. Chiu testified as to whether the variances should be granted to allow the additional acupuncture treatment. Dr. Coladner testified that claimant had tried several different treatments and that acupuncture was the treatment modality that helped her maintain her functional level. Dr. Coladner averred that claimant reported a reduction in pain following the acupuncture treatments, although no improvement in her range of motion. Further, Dr. Coladner asserted that additional acupuncture treatments were recommended because, without them, claimant continued to report worsening pain and therefore diminished function.
Dr. Chiu testified that, in his opinion, the variances were properly denied because the requirements set forth in the Guidelines were not satisfied. Specifically, Dr. Chiu testified that Dr. Coladner’s medical records did not include claimant’s response to treatment or any improvement in her range of motion.
A Workers’ Compensation Law Judge determined that claimant’s medical provider failed to show that the additional acupuncture treatments were medically necessary. In particular, the Judge noted that, although Dr. Coladner testified that claimant reported some pain reduction from the prior treatments, there was no evidence in the record that these earlier treatments resulted in the objective improvement of functional outcomes with respect to claimant’s neck, or that it was reasonable to expect that further acupuncture would result in such improvement.
On claimant’s administrative appeal, the Workers’ Compensation Board panel affirmed the Workers’ Compensation Law Judge’s determination. The Board found that the variance applications failed to meet the burden of proof that the additional acupuncture treatment requested is medically necessary within the meaning of the Guidelines.
Ill
Claimant appealed the Board’s decision, arguing, as relevant here, that (1) the Board lacked the authority to promulgate the regulations and incorporated Guidelines, (2) the variance procedure *466 improperly shifts the burden of proof to claimant’s physician to prove the medical necessity of a proposed treatment, and (3) the Guidelines violate claimant’s due process right to a meaningful hearing.
The Appellate Division, with one Justice dissenting, affirmed (109 AD3d 299 [3d Dept 2013]). The court rejected claimant’s argument that the Board exceeded its statutory authority in promulgating the regulations, holding that “the Board acted within its legislatively conferred authority when it devised a list of preapproved medical care deemed in advance to be medically necessary for specified conditions, and did so in a manner consistent with Workers’ Compensation Law § 13 (a) and the overall statutory scheme” (id. at 307). In support of its conclusion, the court noted that “medical necessity and appropriateness . . . have always been prerequisites to an employer’s obligation” to pay and “the Legislature purposefully conferred the authority on the Board to predetermine medical necessity for medical care, and its scope and duration, consistent with best medical practices” (id. at 306-307 [emphasis omitted]).
The court also rejected claimant’s argument that the variance procedure improperly shifts the burden to the claimant’s treating physician to prove medical necessity, in conflict with Workers’ Compensation Law § 21 (5) {see id. at 307-310). Finally, the court found unavailing claimant’s argument that the Guidelines deprived her of due process, noting that the regulations provide an opportunity to be heard, “an expedited process for determining the medical necessity” of the requested care, and a review process {id. at 310).
The dissenting Justice agreed with the majority’s conclusion that the “Board has authority to promulgate reasonable rules and regulations consistent with the Workers’ Compensation Law,” but disagreed with its “overreaching conclusion that medical treatments falling outside the Guidelines are predetermined and presumed not to be medically necessary” (id. at 312-313 [McCarthy, J., dissenting]). The dissent would have found that the variance procedure conflicts with the statutory scheme and specifically with section 21 (5) (see id. at 313-314). The dissent reasoned that the variance procedure “undermine[s] the remedial purpose of the Workers’ Compensation Law and [is] contrary to the legislative purpose behind authorizing the Board to promulgate [the] Guidelines” (id. at 315).
This Court granted claimant leave to appeal (22 NY3d 854 [2013]).
*467 IV
Claimant first contends that the Board exceeded its statutory-authority to “preauthorize” medical treatment under Workers’ Compensation Law § 13-a (5) by using the Guidelines to “predeny” medical treatment. The Board responds that the Guidelines are a valid exercise of its broad regulatory authority because the regulations are rationally related to the underlying policies of the Workers’ Compensation Law.
The Board is authorized to “adopt reasonable rules consistent with and supplemental to the [Workers’ Compensation Law]” (Workers’ Compensation Law § 117 [1]). Courts will uphold regulations that have “a rationed basis and [are] not unreasonable, arbitrary, capricious or contrary to the statute under which [they were] promulgated” (see generally Kuppersmith v Dowling, 93 NY2d 90, 96 [1999]).
We hold that the Board acted properly and lawfully when it promulgated the Guidelines, as they reasonably supplement Workers’ Compensation Law § 13 and promote the overall statutory framework of the Workers’ Compensation Law, which is to provide appropriate medical care to injured workers. There is no dispute that the Board was statutorily authorized under section 13-a (5) to issue a list of pre-authorized procedures. That determination necessarily meant that the Board consider what is not best practice and what may not be medically necessary. Contrary to claimant’s contention, the procedures that are not on the list are not “pre-denied,” given the possibility of obtaining a variance. In other words, treatments that are not in accord with the Guidelines may nevertheless be approved for particular claimants pursuant to the variance procedure.
The establishment of the variance procedure was within the Board’s broad regulatory powers (Workers’ Compensation Law §§ 13, 141, 117 [1]). The Board explained that the prior lack of standards in assessing the medical necessity of treatment had resulted in “disputes over treatment, delayed care, and increase[d] frictional costs” (Notice of Proposed Rulemaking, NY Reg, June 30, 2010 at 33-38). Disputes over the medical necessity or the frequency/duration of medical care were often made after the care was provided, on a case-by-case basis, when the employer disputed the bill. It was reasonable for the Board to promulgate uniform guidelines for defining the nature and scope of treatment considered medically necessary. By adopting the pre-authorized list and variance procedure for determining *468 the necessity of care, the Board provides a measure of avoiding delay and uncertainty that previously resulted from disputes over the medical necessity of treatment.
V
Claimant next claims that the Guidelines remove the burden of proof from the employer and the carrier and shift it to the injured worker and the treating physician. This, claimant argues, is directly contrary to the Workers’ Compensation Law.
Under the regulations, the burden of proof to establish that a variance is appropriate and medically necessary rests on the treating medical provider (12 NYCRR 324.3 [a] [2]). Whether a treating medical provider has met this burden is a threshold determination that must be made whenever a carrier properly and timely articulates an objection to a variance request.
Contrary to claimant’s contention, nothing in the Workers’ Compensation Law has ever precluded the Board from requiring proof of medical necessity from claimant’s health care provider. Indeed, the claimant generally has the burden in the first instance of proving facts sufficient to support his or her claim for compensation (see Matter of Malacarne v City of Yonkers Parking Auth., 41 NY2d 189, 193 [1976] [claimant has the burden of showing that injuries were sustained in the course of employment]). Moreover, in her argument, claimant relies on the provision of Workers’ Compensation Law § 13-a (5) that an employer’s or carrier’s refusal to authorize “special services” costing more than $1,000 must be based on a “conflicting second opinion” by a Board-authorized physician. That requirement presupposes that the claimant has submitted the first opinion, from his or her treating physician.
We also disagree with claimant’s contention that section 21 (5) of the Workers’ Compensation Law establishes that the burden rests on the employer or carrier. That provision creates a presumption, “[i]n any proceeding for the enforcement of a claim for compensation,” that “the contents of medical and surgical reports introduced in evidence by claimants for compensation shall constitute prima facie evidence of fact as to the matter contained therein” (Workers’ Compensation Law § 21 [5]). It is the carrier that then bears the burden of proffering “substantial evidence” to contradict the content of those medical reports (id.).
We agree with the Appellate Division majority that claimants can continue to rely on the presumption, while also satisfying *469 the variance procedure’s requirement that they establish the medical necessity of the requested treatment. While the presumption establishes the facts contained in the medical report, the claimant must first establish the medical necessity for the treatment.
VI
Finally, claimant argues that the Guidelines deny injured workers due process by predetermining their need for medical treatment. She contends that the Guidelines do not provide an opportunity to be heard in a meaningful time and manner.
Generally, procedural due process principles require an opportunity for a meaningful hearing prior to the deprivation of a significant property interest (see Hodel v Virginia Surface Mining & Reclamation Assn., Inc., 452 US 264, 303 [1981]). “The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner” (Mathews v Eldridge, 424 US 319, 333 [1976] [internal quotation marks omitted]; see Curiale v Ardra Ins. Co., 88 NY2d 268, 274 [1996]).
The Guidelines provide claimants with a meaningful opportunity to be heard on the denial of any variance request. The variance procedure expressly provides a process for requesting review of the denial of a variance request, under which the treating medical provider may elect review by a medical arbitrator or through an expedited hearing process (see 12 NYCRR 324.3 [d]). Indeed, in this case, a hearing was held at which a Workers’ Compensation Law Judge considered testimony by both claimant’s own care provider and the independent expert engaged by the carrier. Claimant was represented by counsel, who cross-examined the carrier’s expert. The Workers’ Compensation Law Judge’s decision was reviewed by the Board, which considered legal arguments by claimant’s attorney, and the Board’s decision was subject to judicial review.
Accordingly, the order of the Appellate Division should be affirmed, with costs.

. The guidelines were limited to the treatment of injuries to the low back, cervical spine, knee, and shoulder because those injuries account for a disproportionately large amount of the cost of workers’ compensation medical care.

. Although Dr. Coladner sought prior authorization for the acupuncture treatment under Workers’ Compensation Law § 13-a (5), at that time no such prior authorization was required under that section because the treatments did not involve “specialist consultations” or “special services” within the meaning of that section and would not have cost more than $1,000.

. See New York State Workers’ Compensation Board, New York Neck Injury Medical Treatment Guidelines at 21 (2d ed 2013), available at http:// www.wcb.ny.gov/content/main/hcpp/MedicalTreatmentGuidelines/ NeckInjuryMTG2012.pdf.