In the Matter of the Claim of SHARON K. BLAND, Appellant, v GELLMAN, BRYDGES & SCHROFF et al., Respondents. WORKERS' COMPENSATION BOARD, Respondent. (Claim No. 1.) In the Matter of the Claim of SHARON K. BLAND, Appellant, v RONCO COMMUNICATIONS et al., Respondents. WORKERS' COMPENSATION BOARD, Respondent. (Claim No. 2.) [58 NYS3d 225]—

Aarons, J. Appeals (1) from an amended decision of the Workers' Compensation Board, filed January 20, 2015, which, among other things, approved claimant's request for a variance and denied claimant's request for reconsideration and/or full Board review, (2) from a decision of said Board, filed January 21, 2015, which ruled, among other things, that claimant did not sustain a consequential causally-related injury, has a partial impairment of a moderate-to-marked degree and sustained a 50% loss of wage-earning capacity, (3) from an amended decision of said Board, filed January 27, 2015, which, among other things, approved claimant's request for a variance and denied requests for reconsideration and/or full Board review, (4) from a decision of said Board, filed February 2, 2015, which denied claimant's request for reconsideration and/or full Board review,

and (5) from a decision of said Board, filed February 25, 2015, which denied claimant's request for reconsideration and/or full Board review.

The underlying history is set forth in prior appeals to this Court involving these parties (*Matter of Bland v Gellman, Brydges & Schroff*, 127 AD3d 1436 [2015], *lv dismissed* 26 NY3d 948 [2015]; *Matter of Bland v Gellman, Brydges & Schroff*, 103 AD3d 969 [2013], *lv dismissed* 21 NY3d 920 [2013]; *Matter of Bland v Gellman, Brydges & Schroff*, 100 AD3d 1289 [2012], *lv dismissed* 20 NY3d 1055 [2013]). Briefly, in 1993, a workers' compensation claim was established for claimant (claim No. 1) and, in 2008, responsibility for this claim was subsequently transferred to the Special Fund for Reopened Cases. Also in 2008, a second claim was established for which Travelers Insurance Company was responsible (claim No. 2). Liability was apportioned equally between the two claims.

The first appeal (appeal No. 520498) stems from claimant's variance request made through her treating physician to treat her thoracic outlet syndrome with aquatic therapy. The Workers' Compensation Board denied the variance request on the basis that claimant did not properly file a request for review, but this determination was subsequently reversed by this Court (*Matter of Bland v Gellman, Brydges & Schroff*, 103 AD3d at 971). Upon remittal, the Board, in a May 2013 decision, denied the variance request on the merits. After claimant sought reconsideration, the Board issued a January 20, 2015 amended decision concluding that full Board review was unwarranted. The Board also found that the requested aquatic therapy was not appropriate for the treatment of thoracic outlet syndrome and removed its previous finding in the May 2013 decision that the Shoulder Injury Medical Treatment Guidelines do not apply to thoracic outlet syndrome.

Regarding the second appeal (appeal No. 520500), a Workers' Compensation Law Judge (hereinafter WCLJ) amended claimant's claims to include consequential myofascial pain syndrome but not her fibromyalgia condition. The WCLJ also determined that claimant had reached maximum medical improvement, that she had a partial impairment of a moderate-to-marked degree, that she had a 50% loss of wage-earning capacity and that she tried to influence the opinion of a treating physician in violation of Workers' Compensation Law § 13-a (6). The Board, in a decision issued January 21, 2015, reversed the WCLJ's finding that claimant violated Workers' Compensation Law § 13-a (6) and otherwise upheld the balance of the WCLJ's findings.

Regarding the third appeal (appeal No. 520497), a WCLJ approved claimant's request for Botox therapy to treat her causally-related fibromyalgia and migraines. In an August 26, 2013 decision, the Board upheld this determination and further found that the Shoulder Injury Medical Treatment Guidelines do not apply to thoracic outlet syndrome. In an amended decision issued January 27, 2015, the Board removed from its findings that claimant had a causally-related fibromyalgia condition and that the Shoulder Injury Medical Treatment Guidelines do not apply to thoracic outlet syndrome. The Board's determination that claimant was entitled to Botox therapy for the migraines was kept intact.

Regarding the fourth appeal (appeal No. 520499), a WCLJ directed Travelers to reimburse claimant for certain medical and travel expenses. In an August 27, 2013 decision, the Board rescinded the WCLJ's decision, found that Travelers was entitled to an audit of claimant's claimed expenses from 2008 and 2012 and directed Travelers to provide claimant and the Board with the results of the audit. Claimant subsequently sought reconsideration and/or full Board review of, and also directly appealed from, the August 27, 2013 decision.[1] The Board denied claimant's application for reconsideration and/or full Board review in a decision filed February 2, 2015.

Regarding the fifth appeal (appeal No. 520728), a WCLJ concluded that claimant was attached to the labor market from June 2008 to December 2011 and granted certain awards for that time period. The Board, in a decision issued August 26, 2013, determined that claimant's attachment to the labor market had been proven and modified the WCLJ's award for certain time periods. The Board also determined that claimant was not entitled to travel expenses related to out-of-state travel for treatment. Claimant thereafter sought reconsideration and/or full Board review of, and also directly appealed from, the August 26, 2013 decision.[2] The Board, in a decision filed February 25, 2015, denied claimant's request for reconsideration and/or full Board review. Claimant separately appeals from these five decisions. We have consolidated the appeals for disposition.

As to the first appeal, claimant initially challenges the Board's finding that the treatment of thoracic outlet syndrome

1. We affirmed the Board's August 27, 2013 decision upon claimant's appeal (*Matter of Bland v Gellman, Brydges & Schroff*, 127 AD3d at 1437-1438).

2. We affirmed the Board's August 26, 2013 decision upon claimant's appeal (*Matter of Bland v Gellman, Brydges & Schroff*, 127 AD3d at 1437).

falls within the Shoulder Injury Medical Treatment Guidelines. The Board has the authority to promulgate medical treatment guidelines defining the nature and scope of necessary treatment (*see Matter of Kigin v State of N.Y. Workers' Compensation Bd.*, 24 NY3d 459, 463 [2014]). An agency's construction of its statutes and regulations will be upheld if rational and reasonable (*see Matter of Cooke Ctr. for Learning & Dev. v Mills*, 19 AD3d 834, 835 [2005], *lv dismissed and denied* 5 NY3d 846 [2005]). Here, the Board explained that "thoracic outlet syndrome is deemed a brachial plexus injury which is considered a shoulder injury" and, therefore, governed by the Shoulder Injury Medical Treatment Guidelines. The documentary evidence further reveals that an email was sent to claimant from the Board's Medical Director's office explaining that, under the Board's precedent, thoracic outlet syndrome has been included within the Shoulder Injury Medical Treatment Guidelines. As such, claimant's contention is without merit.

Claimant also contends that the Board's denial of her variance request for aquatic therapy was not supported by substantial evidence. We disagree. "The burden of proof to establish that a variance is appropriate for the claimant and medically necessary shall rest on the Treating Medical Provider requesting the variance" (12 NYCRR 324.3 [a] [2]; *see Matter of Kigin v State of N.Y. Workers' Compensation Bd.*, 24 NY3d at 468). Here, Bennett Myers, claimant's treating neurologist, submitted the variance form and medical statement of necessity and testified at the hearing that claimant "has done well with aqua therapy." Notably, however, Myers recognized that, notwithstanding such participation in "aqua therapy," claimant's functionality has not improved. Additionally, Myers failed to explain in the medical statement of necessity why other treatment options under the Medical Treatment Guidelines were not appropriate (*see* 12 NYCRR 324.3 [a] [3] [i] [c]). Accordingly, we find that substantial evidence supports the Board's determination that Myers failed to establish that the requested variance was medically necessary for claimant (*see generally Matter of Kigin v State of N.Y. Workers' Compensation Bd.*, 24 NY3d at 468).

As to the second appeal, claimant bore the burden of demonstrating, through competent medical evidence, the existence of a causal relationship between an established work-related injury and an alleged consequential injury (*see Matter of White v House*, 147 AD3d 1173, 1173-1174 [2017]). "Whether a subsequent disability arose consequentially from an existing compensable injury is a factual question for resolution by the

Board, and its determination will not be disturbed when supported by substantial evidence" (*Matter of Poverelli v Nabisco/Kraft Co.*, 123 AD3d 1309, 1310 [2014] [internal quotation marks, brackets and citations omitted]).

Here, the record reveals conflicting medical evidence as to whether claimant's alleged fibromyalgia was causally related to her work-related injuries (*see Matter of Connolly v Hubert's Serv., Inc.*, 96 AD3d 1115, 1116 [2012]). We further note that one of claimant's treating neurologists testified that claimant did not meet all of the diagnostic criteria for fibromyalgia. Because the resolution of conflicting medical opinions is within the exclusive province of the Board, its finding is supported by substantial evidence, and it will not be disturbed (*see Matter of Johnson v Adams & Assoc.*, 140 AD3d 1552, 1553 [2016]; *Matter of Stange v Angelica Textile Servs., Inc.*, 139 AD3d 1294, 1296 [2016]). For similar reasons, we discern no basis to disturb the Board's finding that claimant had a partial impairment of a moderate-to-marked degree (*see Matter of Soluri v Superformula Prods., Inc.*, 96 AD3d 1292, 1292-1293 [2012]; *Matter of Ferraina v Ontario Honda*, 32 AD3d 643, 644 [2006]).

We also discern no basis to disturb the Board's finding that claimant had a 50% loss of wage-earning capacity. Claimant, who had a Bachelor's degree in accounting and a paralegal certificate, testified that she is capable "of a maximum of four hours of moving around." Myers testified that claimant can perform her daily living activities on her own, that she did not require any assistive device for walking, and that he did not impose any driving restrictions upon claimant. Furthermore, Myers stated that claimant could prepare computer documents and use voice recognition software in an employment setting that involved computer work. Myers also testified that while claimant would have issues with sustained work, she might be able to periodically work a four-hour work day. In view of the foregoing, we conclude that substantial evidence exists to support the Board's determination that claimant had a 50% loss of wage-earning capacity (*see Matter of Roman v Manhattan & Bronx Surface Tr. Operating Auth.*, 139 AD3d 1304, 1306 [2016]; *Matter of Cameron v Crooked Lake House*, 106 AD3d 1416, 1416 [2013], *lv denied* 22 NY3d 852 [2013]).

As to the third appeal, it must be dismissed. Claimant stated in her brief that she was "relinquish[ing] her right to [f]ibromyalgia . . . care" given that it was now being provided by private insurance. In view of this, and in light of the Board's finding in

claimant's favor that she was entitled to Botox therapy for her causally-related migraines, claimant is not aggrieved by the Board's January 27, 2015 amended decision (*see Matter of Bland v Gellman, Brydges & Schroff*, 127 AD3d at 1437).

As to the fourth and fifth appeals, in each one, the Board denied claimant's request for reconsideration and/or full Board review. Inasmuch as claimant failed to demonstrate that there was newly discovered evidence, that there was a material change in condition or that the Board failed to consider issues raised when considering the application, we cannot conclude that the Board's denial of claimant's requests was an abuse of discretion or arbitrary and capricious (*see Matter of Alamin v Down Town Taxi, Inc.*, 141 AD3d 975, 976 [2016], *appeal dismissed* 28 NY3d 1153 [2017]; *Matter of Regan v City of Hornell Police Dept.*, 124 AD3d 994, 997 [2015]; *Matter of Kaja v Siller Bros., Inc.*, 74 AD3d 1511, 1512 [2010]).

Finally, claimant's remaining contentions, to the extent not specifically addressed herein, are either without merit or not properly before this Court.

Garry, J.P., Lynch, Rose and Clark, JJ., concur. Ordered that the appeal from the amended decision filed January 27, 2015 is dismissed, without costs.

Ordered that the decisions and amended decisions filed January 20, 2015, January 21, 2015, February 2, 2015 and February 25, 2015 are affirmed, without costs.