Matter of Czechowski v MCS Remedial Servs. (2019 NY Slip Op 06839)





Matter of Czechowski v MCS Remedial Servs.


2019 NY Slip Op 06839


Decided on September 26, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: September 26, 2019

528489

[*1]In the Matter of Thomas Czechowski, Appellant,
v
MCS Remedial Services et al., Respondents. Workers' Compensation Board, Respondent.

Calendar Date: September 4, 2019

Before: Egan Jr., J.P., Clark, Devine, Aarons and Pritzker, JJ.


Dolce Panepinto PC, Buffalo (Holly L. Schoenborn of counsel), for appellant.
Goldberg Segalla LLP, Buffalo (Cory A. DeCresenza of counsel), for MCS Remedial Services and another, respondents.



Egan Jr., J.P.
Appeal from a decision of the Workers' Compensation Board, filed August 22, 2018, which denied authorization for surgery to claimant's lumbar spine.
In December 2014, claimant was working as a laborer when an electric wheelbarrow that he was operating malfunctioned, causing him to sustain multiple injuries, including his left foot and back. He filed a claim for workers' compensation benefits, and his claim was established for work-related injuries to his left foot and lower back.[FN1]
In February 2015, claimant sought medical treatment from David Bagnall, a rehabilitation specialist, who diagnosed him with a lumbar disc herniation at L3-4. He was then evaluated by Douglas Moreland, a neurosurgeon, who concluded that, based on recent MRI results, claimant had disc degeneration throughout his entire lumbosacral spine, as well as disc herniations causing stenosis. Moreland referred claimant to physical therapy, in which he participated during the month of March 2015.
Claimant discontinued treatment with Bagnall in November 2015. In November 2016, he obtained treatment from William Capicotto, an orthopedic surgeon, who performed surgery on claimant's cervical spine. Capicotto also treated claimant for problems that claimant was experiencing with his lumbar spine and diagnosed him with intervertebral disc disorders with radiculopathy, spinal stenosis and spinal instability of the lumbar region. Capicotto requested authorization from the employers' workers' compensation carrier to perform surgery on claimant consisting of an anterior lumbar discectomy and fusion at L2-3, L3-4, L4-5 and L5-S1 with a PEEK intervertebral fusion device and bone graft, as well as a posterior laminectomy and fusion with instrumentation at L2, L3, L4, L5 and S1. While this request was pending, claimant underwent an independent medical examination by Gregory Chiaramonte, an orthopedic surgeon, who diagnosed him with lumbar spine sprain/strain, which Chiaramonte found was resolving.
Thereafter, Capicotto continued to request authorization to perform surgery on claimant's lumbar spine. The carrier responded by denying such request based upon the report of Pamela Mehta, an orthopedic surgeon, who concluded that, absent evidence of instability in claimant's lumbar spine or an indication that conservative treatment measures had been unsuccessful, the need for surgery was not established under the applicable Workers' Compensation Medical Treatment Guidelines. A Workers' Compensation Law Judge (hereinafter WCLJ) continued the case to take Capicotto's deposition. After his deposition was taken and following summations, the WCLJ credited Capicotto's testimony and authorized the requested surgery. The carrier, in turn, issued a written authorization to this effect, noting that the surgery was "approved per WC Board." The carrier then applied to the Workers' Compensation Board for review of the WCLJ's decision. The Board credited Mehta's opinion over Capicotto's and concluded that the WCLJ had improperly authorized the surgery to claimant's lumbar spine. Claimant appeals.
Initially, it is well settled that "[t]he Board has the authority to promulgate medical treatment guidelines defining the nature and scope of necessary treatment" (Matter of Gasparro v Hospice of Dutchess County, 166 AD3d 1271, 1272 [2018] [internal quotation marks and citation omitted]; see Matter of Kigin v State of N.Y. Workers' Compensation Bd., 24 NY3d 459, 463 [2014]). The guidelines applicable here pertain to mid and low back injuries where the suggested course of treatment is lumbar surgery, specifically lumbar discectomy and/or lumbar fusion (see State of New York Workers' Compensation Board Mid and Low Back Injury Medical Treatment Guidelines, at 66-68 [Sept. 2014]). The record here contains conflicting medical evidence as to whether such surgery was authorized under the guidelines. Mehta noted that, under the guidelines, a "[l]umbar discectomy is recommended as an effective operation to speed recovery in patients who have radiculopathy due to ongoing nerve root compression, who continue to have significant pain and functional limitation after 6 to 12 weeks and who have been provided appropriate conservative therapy during which time they experienced no progressive neurological deficits." She further noted that, under the guidelines, "a [l]umbar fusion is recommended as a treatment for spinal stenosis when concomitant instability has been proven . . . [and] is not recommended for spinal stenosis without instability."[FN2] After reviewing claimant's medical records, including the reports of other physicians, Mehta found that "definite evidence of spinal instability is not noted on imaging" and that "[t]here is limited indication that the claimant has tried and failed all appropriate conservative measures." Consequently, she opined that the lumbar surgery was not authorized under the guidelines.
Notably, Mehta's conclusion as to the absence of spinal instability is consistent with the findings of Chiaramonte, who diagnosed claimant with lumbar sprain/strain and found that this condition was resolving. Likewise, her conclusion that claimant had not undergone 6 to 12 weeks of conservative treatment is supported by the lack of evidence that claimant participated in physical therapy other than in March 2015. Although Capicotto disagreed with Mehta's opinion and concluded that claimant's lumbar surgery was authorized under the guidelines, the Board is vested with the authority to resolve conflicting medical evidence (see Matter of Oparaji v Books & Rattles, 147 AD3d 1165, 1166-1167 [2017], lv denied 29 NY3d 918 [2017]; Matter of Krietsch v Northport-East Northport UFSD, 116 AD3d 1255, 1257 [2014]). We defer to its findings in this regard and find that substantial evidence supports the Board's decision. We have considered claimant's remaining contentions and find them to be unavailing.
Clark, Devine, Aarons and Pritzker, JJ., concur.
ORDERED that the decision is affirmed, without costs.



Footnotes

Footnote 1: His claim was subsequently amended to include injuries to his wrists, right hip and neck.

Footnote 2: Although Mehta mistakenly referred to the guidelines as the Louisiana guidelines, the substantive guidelines discussed in her report are the State of New York's Workers' Compensation Mid and Low Back Medical Treatment Guidelines.