Matter of Georges v Zotos Intl. Inc. (2021 NY Slip Op 05377)





Matter of Georges v Zotos Intl. Inc.


2021 NY Slip Op 05377


Decided on October 7, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:October 7, 2021

532177
[*1]In the Matter of the Claim of Janan Georges, Respondent,
v
Zotos International Inc. et al., Appellants. Workers' Compensation Board, Respondent.

Calendar Date:September 9, 2021

Before:Lynch, J.P., Aarons, Pritzker, Reynolds Fitzgerald and Colangelo, JJ.

Hamberger & Weiss LLP, Rochester (Ronald E. Weiss of counsel), for appellants.
Bond, McDonald & Lehman, PC, Geneva (Wendy Hauck of counsel), for Janan Georges, respondent.
Letitia James, Attorney General, New York City (Alison Kent-Friedman of counsel), for respondent.



Pritzker, J.
Appeal from a decision of the Workers' Compensation Board, filed March 26, 2020, which ruled, among other things, that claimant was entitled to indemnity benefits for certain time periods after she had been classified as permanently partially disabled.
Claimant filed two workers' compensation claims, both of which were established for injuries arising from separate work-related accidents. The first was for an injury to her right hand arising from a September 1997 accident. The second was for an injury to her right hand that was amended to include reflex sympathetic dystrophy arising from a January 1999 accident. In 2000, a Workers' Compensation Law Judge (hereinafter WCLJ) classified claimant with a permanent partial disability that was apportioned 20% to the first claim and 80% to the second claim, and awarded her indemnity benefits.
In 2003, claimant left the United States and moved to Syria to attend to personal family matters following the death of her father-in-law. She did not work while in Syria and resided there until 2012. In July 2009, the employer and its workers' compensation carrier (hereinafter collectively referred to as the carrier) filed a request for further action seeking to suspend indemnity benefits given that claimant was out of the country. Following a hearing, the WCLJ instructed the carrier to discontinue payments on both claims, directed claimant to produce records of her job search and marked the case for no further action pending the production of claimant's job search records. In July 2010, the WCLJ conducted a hearing for the purpose of obtaining claimant's testimony on the issues of degree of disability, total industrial disability and attachment to the labor market. Claimant testified from Syria via speaker phone. At the conclusion of the hearing, the WCLJ noted that the parties were engaged in settlement discussions and marked the case for no further action.
In 2015, following claimant's return to the United States, she volunteered to work at the Salvation Army and eventually obtained a paying position working 10 hours per week. In addition, she underwent medical treatment for carpal tunnel syndrome. In November 2016, her counsel filed a request for further action and raised a claim for consequential left carpal tunnel syndrome. Claimant had carpel tunnel release surgery to her left upper limb on January 3, 2017 and stopped working the day before.[FN1] Following further proceedings, the WCLJ amended the claim to include consequential left carpal tunnel syndrome and continued the case to consider claimant's further causally-related disability and/or lost time. A panel of the Workers' Compensation Board affirmed the WCLJ's decision.
In October 2018, the WCLJ conducted a hearing on the issue of claimant's reduced earnings subsequent to August 7, 2009 and her attachment to the labor market. The carrier raised the issue of the interpretation of Workers' Compensation Law § 15 (3) (w) given claimant's [*2]prior classification as permanently partially disabled. Without deciding this issue, the WCLJ proceeded with the hearing. Claimant gave testimony and the carrier submitted the job search records that had previously been provided by claimant's counsel. The carrier conceded that the proof established claimant's attachment to the labor market from April 1, 2014 to April 25, 2015 and that claimant was entitled to awards at an overall 75% permanent partial disability rate during this time period. As for the time periods from August 7, 2009 to April 1, 2014 and from April 25, 2015 to October 11, 2018 (the date of the hearing), the WCLJ held awards in abeyance pending receipt of the parties' memoranda of law on the issues of the interpretation of Workers' Compensation Law § 15 (3) (w), claimant's attachment to the labor market during those time periods and claimant's causally-related lost time. After hearing oral argument on these issues, the WCLJ concluded, based on claimant's prior classification and the provisions of Workers' Compensation Law § 15 (3) (w), that claimant did not have to demonstrate labor market attachment. The WCLJ further noted that claimant had made diligent efforts to obtain employment and, consequently, was entitled to awards based on her prior classification. Accordingly, the WCLJ made the following awards: (1) payments for the periods from August 7, 2009 to April 1, 2014 and from April 25, 2015 to October 15, 2015 at the overall permanent partial disability rate; (2) payments for the period October 15, 2015 to January 3, 2017 at the reduced earnings rate; (3) payments for the period January 3, 2017 to February 13, 2017 at the temporary total disability rate; and (4) payments for the period February 13, 2017 to January 23, 2019 at the overall permanent partial disability rate, with payments thereafter to be continued at the permanent partial disability rate.
The carrier sought Board review of the WCLJ's decision, specifically with respect to claimant's eligibility for indemnity awards from August 7, 2009 to April 1, 2014 and from April 25, 2015 onward, as well as the WCLJ's interpretation of Workers' Compensation Law § 15 (3) (w). The Board concluded that the record did not establish that claimant's wage loss was solely related to factors other than her disability. It also found that claimant was entitled to awards of indemnity benefits during the time periods at issue based on the 2017 amendment to Workers' Compensation Law § 15 (3) (w), which obviated the need for her to demonstrate ongoing attachment to the labor market. Consequently, the Board affirmed the WCLJ's decision. This appeal by the carrier ensued.
The carrier contends, among other things, that the Board misconstrued the 2017 amendment to Workers' Compensation Law § 15 (3) (w) in concluding that claimant did not have to demonstrate ongoing attachment to the labor market in order to be entitled to indemnity benefits. We disagree. The amendment, which [*3]became effective on April 10, 2017 (L 2017, ch 59, § 1, part NNN, § 1, subpart A, § 1), provides, in relevant part, that in certain cases of permanent partial disability, "compensation . . . shall be payable during the continuance of such permanent partial disability, without the necessity for the claimant who is entitled to benefits at the time of classification to demonstrate ongoing attachment to the labor market" (Workers' Compensation Law § 15 [3] [w] [emphasis added]; see Matter of O'Donnell v Erie County, 35 NY3d 14, 18-19 [2020]). The Court of Appeals has stated that, "for this section to relieve a claimant of the former burden to demonstrate ongoing attachment, the claimant must have been classified initially as permanently partially disabled and found to be entitled to a loss of wage earnings compensation award" (Matter of O'Donnell v Erie County, 35 NY3d at 21).
Although the amendment has been applied retroactively in some instances (see Matter of Ireland v Cattaraugus County Dept. of Nursing Homes-Olean Pines, 182 AD3d 956, 958 [2020]), it has not been applied to all claimants who have been classified as permanently partially disabled prior to its effective date (see Matter of Scott v Visiting Nurses Home Care, 172 AD3d 1868, 1870 [2019], lv dismissed 34 NY3d 1011 [2019]). As this Court has recognized, the amendment was intended to apply to claimants who have involuntarily withdrawn from the labor market and are entitled to receive wage replacement benefits having been classified with a permanent partial disability, not to those claimants whose withdrawal was voluntary (see id. at 1871-1872). This conclusion is supported by the legislative history of the amendment, which includes a letter from the Board's general counsel in which he observed that "[t]his amendment . . . affects previously decided cases in which there has not been a finding that the claimant had voluntarily removed him[self] or herself from the labor market at the time of the classification" (see Letter from David F. Wertheim, Workers' Compensation Board General Counsel, May 23, 2017, Bill Jacket, L 2017, ch 59, at 29). Accordingly, where, prior to the effective date of the amendment, a determination has been made that a claimant was not attached to the labor market or voluntarily withdrew therefrom, the amendment is not applicable (see Matter of Scott v Visiting Nurses Home Care, 172 AD3d at 1871).
Here, in 2000, claimant was classified as permanently partially disabled and was awarded indemnity benefits. There was no finding that claimant voluntarily withdrew from the labor market at the time of classification. In 2009, when the carrier filed a request for further action based on claimant's absence from the country, it did not raise the issue of claimant's voluntary withdrawal from the labor market. At the August 2009 hearing that followed, the WCLJ suspended benefits and directed claimant to produce job search records, but again did not make any findings that [*4]claimant voluntarily withdrew from the labor market or that she was no longer attached thereto.[FN2] Although the WCLJ conducted a July 2010 hearing to address issues of claimant's degree of disability, total industrial disability and labor market attachment, the WCLJ did not decide these issues, but marked the case for no further action in light of the parties' settlement discussions. The issue of claimant's labor market attachment was not revisited again until the October 2018 hearing before the WCLJ at which the carrier raised the issue of the interpretation of Workers' Compensation Law § 15 (3) (w). This was well after the amendment was passed and became effective. Given the absence of any indication in the record that a finding was made that claimant voluntarily withdrew from the labor market prior to the effective date of the amendment, we agree with the Board that, in accordance with Workers' Compensation Law § 15 (3) (w), she was not required to demonstrate ongoing attachment to the labor market following her classification in order to be entitled to indemnity benefits (see Matter of O'Donnell v Erie County, 35 NY3d at 21; compare Matter of Scott v Visiting Nurses Home Care, 172 AD3d at 1871-1872). We have considered the carrier's remaining arguments and find them to be without merit. Consequently, we find no reason to disturb the Board's decision.
Lynch, J.P., Aarons, Reynolds Fitzgerald and Colangelo, JJ., concur.
ORDERED that the decision is affirmed, without costs.



Footnotes

Footnote 1: A few days after her surgery, claimant was involved in a motor vehicle accident and sustained injuries requiring hip surgery. She also had surgery on her left index finger following an accident at home. Claimant did not return to work after these surgeries.

Footnote 2: Notably, this decision was never appealed to the Board.