Matter of Blake v Niagara Wheatfield Cent. Sch. Dist. (2026 NY Slip Op 00949)

Matter of Blake v Niagara Wheatfield Cent. Sch. Dist.

2026 NY Slip Op 00949

Decided on February 19, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 19, 2026

CV-24-1460
[*1]In the Matter of the Claim of Bonnie C. Blake, Appellant,
vNiagara Wheatfield Central School District, Respondent, and FCS Administrators et al., Respondents. Workers' Compensation Board, Respondent. (And Another Related Claim.)

Calendar Date:January 8, 2026

Before:Garry, P.J., Ceresia, Fisher, McShan and Mackey, JJ.

Viola, Cummings & Lindsay, LLP, Niagara Falls (Nicholas D. Mansour of counsel), for appellant.
The Law Offices of Melissa A. Day, PLLC, Amherst (Melissa A. Day of counsel), for FCS Administrators and another, respondents.

Ceresia, J.
Appeal from an amended decision of the Workers' Compensation Board, filed July 24, 2024, which ruled, among other things, that claimant was required to demonstrate an ongoing attachment to the labor market.
In 2000, claimant was injured at work, and her subsequent claim (hereinafter Claim No. 1) for workers' compensation benefits was established for injuries to the neck and shoulder. In 2009, awards were made up to August 3, 2009, with no direction for continuing awards because claimant had returned to work at an average weekly wage in excess of the average weekly wage that was previously established. In 2011, claimant was classified with a permanent partial disability; however, no award was made because claimant was working and, therefore, there were no causally-related lost earnings at that time (see Workers' Compensation Law § 15 [3] [w]).[FN1] In 2013, the workers' compensation carrier was discharged from liability, and liability was transferred to the Special Fund for Reopened Cases (hereinafter Special Fund) pursuant to Workers' Compensation Law § 25-a.
In October 2017, claimant was injured while working as a bus driver, and her ensuing claim (hereinafter Claim No. 2) for workers' compensation benefits was established for injuries to her neck and back with temporary indemnity benefits awarded. Following a February 2020 hearing, a Workers' Compensation Law Judge (hereinafter WCLJ), among other things, continued temporary indemnity benefits at a temporary partial disability rate and found that apportionment between the two cases was appropriate, with 50% to each claim. In July 2023, the workers' compensation carrier in Claim No. 2 raised the issue of claimant's attachment to the labor market, and claimant was directed to provide evidence of her ongoing labor market attachment. Following an August 2023 hearing to address, among other things, the issue of claimant's attachment to the labor market as well as permanency, the WCLJ, in Claim No. 2, classified claimant with a permanent partial disability, found that claimant had sustained a 65% loss of wage-earning capacity and determined that claimant was capable of sedentary work. The WCLJ also found that claimant had demonstrated her attachment to the labor market based upon her search efforts within her medical restrictions. Upon administrative review sought by the workers' compensation carrier relative to Claim No. 2, the Workers' Compensation Board, as relevant here, modified the decision of the WCLJ, finding that claimant was unattached to the labor market, effective April 17, 2023, and rescinded any awards made after that date as a result thereof. Upon reviewing and considering claimant's subsequent application for reconsideration and/or full Board review, the Board issued an amended Board panel decision in July 2024 finding that full Board review was not warranted but added in its determination that claimant was also not attached to the labor market in Claim No. 1. In so ruling, the Board reasoned [*2]that — because claimant was working at or above preinjury wages in 2011 when she was classified with a permanent partial disability and therefore did not receive any awards for lost time or reduced earnings — "claimant does not receive the benefit of the [Workers' Compensation Law] § 15 [3] [w] amendment and must prove an [ongoing] attachment to the labor market in order to be entitled to benefits." Claimant appeals.[FN2]
We begin with claimant's argument raising procedural due process concerns regarding the Special Fund's lack of notice and participation in the underlying proceedings that addressed, among other things, labor market attachment (see generally Matter of Kigin v State of N.Y. Workers' Compensation Bd., 24 NY3d 459, 469 [2014]; Matter of Sheikh v White & Blue Group Corp., 168 AD3d 1196, 1199 [3d Dept 2019]). At the August 2023 hearing, the WCLJ reiterated, as previously directed, that Claim No. 1 was ordered to travel with Claim No. 2 as a "closed reference." As a result, it is true that neither the Special Fund nor its third-party administrator were notified of, or appeared at, the underlying hearing addressing labor market attachment. These concerns, however, were not raised below and were therefore not properly preserved by claimant (see 12 NYCRR 300.13 [b] [4] [v]; Matter of Alzate v Quality Bldg. Servs. Corp., 238 AD3d 1437, 1440 [3d Dept 2025], lv denied 44 NY3d 910 [2026]). In any event, were claimant's due process concerns properly before us, we would note that the Special Fund was not aggrieved by the Board's determination below regarding labor market attachment (see Matter of Talarico v Niagara County Dept. of Social Servs., 225 AD3d 1061, 1062 [3d Dept 2024]), and we agree with the Special Fund that only it possesses the requisite standing to interpose an objection to an alleged violation of its own procedural due process rights.
Turning to the issue of labor market attachment, the gravamen of claimant's argument here is that, by operation of the amendment in Workers' Compensation Law § 15 (3) (w), she is not required to show an ongoing labor market attachment because, when she was classified with a permanent partial disability in 2011, she had returned to full-time employment and was therefore attached to the labor market, notwithstanding the absence of a specific determination by the Board in 2011 on this point. In 2017, Workers' Compensation Law § 15 (3) (w) was amended to provide, in relevant part, that, in certain cases of permanent partial disability, "compensation . . . shall be payable during the continuance of such permanent partial disability, without the necessity for the claimant who is entitled to benefits at the time of classification to demonstrate ongoing attachment to the labor market" (L 2017, ch 59, § 1, part NNN, § 1, subpart A, § 1). "For the amended statute to relieve a claimant from the burden of demonstrating ongoing attachment, 'the claimant must have been classified initially as permanently partially [*3]disabled and found to be entitled to a loss of wage earnings compensation award' " (Matter of Digbasanis v Pelham Bay Donuts Inc., 224 AD3d 1047, 1048 [3d Dept 2024], quoting Matter of O'Donnell v Erie County, 35 NY3d 14, 21 [2020]; see Matter of Scott v Visiting Nurses Home Care, 172 AD3d 1868, 1872 [3d Dept 2019], lv dismissed 34 NY3d 1011 [2019]). "[T]he amendment to Workers' Compensation Law § 15 (3) (w) does not overrule the requirement that a claimant must show attachment to the labor market at the time of classification" before receiving any indemnity benefits pursuant to a nonschedule award (Matter of Ryan v City of Albany Water Dept., 244 AD3d 1475, 1476 [3d Dept 2025] [internal quotation marks, ellipsis and citation omitted]; see Matter of O'Donnell v Erie County, 35 NY3d at 21; Matter of Delk v Orange & Rockland, 191 AD3d 1067, 1070 [3d Dept 2021]). Concerning the retroactivity of the amendment, "it is clear that the 2017 amendment applies to claimants who had been classified as permanently partially disabled prior to the amendment's date" (Matter of Scott v Visiting Nurses Home Care, 172 AD3d at 1870).[FN3] Further, we have previously held that, in cases where there is no finding at the time of classification that a claimant has voluntarily withdrawn from the labor market and there is also no subsequent finding by the Board of voluntary withdrawal at any time prior to the 2017 amendment, "the 2017 amendment applies retroactively to the claim and obviates the need for claimant to demonstrate an attachment to the labor market" (Matter of Ireland v Cattaraugus County Dept. of Nursing Homes-Olean Pines, 182 AD3d 956, 958 [3d Dept 2020]; see Matter of Wilber v Hamister Group, LLC, 214 AD3d 1280, 1281-1282 [3d Dept 2023], lv denied 40 NY3d 903 [2023]; cf. Matter of Georges v Zotos Intl. Inc., 198 AD3d 1047, 1050 [3d Dept 2021]).
Here, in 2011, claimant was classified as permanently partially disabled but was not awarded any indemnity benefits at that time because she returned to full-time employment at preinjury wages. Thus, there can be, and is, no dispute that claimant was attached to the labor market at the time that she was classified with a permanent partial disability. Moreover, although she was not awarded any benefits at that time, "[t]here was no finding that claimant voluntarily withdrew from the labor market at the time of classification" (Matter of Georges v Zotos Intl. Inc., 198 AD3d at 1050) or evidence in the record that, prior to the 2017 amendment, the Special Fund raised the issue of claimant's attachment to the labor market (see id. at 1051). Thus, we have little difficulty in concluding that Workers' Compensation Law § 15 (3) (w) applies retroactively here to relieve claimant of the burden of demonstrating ongoing attachment to the labor market following her 2011 classification in Claim No. 1 in order to be entitled to indemnity benefits (see Matter of Wilber v Hamister Group, LLC, 214 AD3d at 1281-1282; Matter of Georges v [*4]Zotos Intl. Inc., 198 AD3d at 1050-1051; Matter of Ireland v Cattaraugus County Dept. of Nursing Homes-Olean Pines, 182 AD3d at 958; compare Matter of Pryer v Incorporated Vil. of Hempstead, 175 AD3d at 1665; Matter of Scott v Visiting Nurses Home Care, 172 AD3d at 1871-1872). To the extent that we have not addressed any of claimant's remaining contentions, they have been considered and found to be without merit or are academic in light of our determination. Consequently, we reverse that portion of the amended decision finding that claimant was obligated to show attachment to the labor market in Claim No. 1 and remit for further proceedings consistent with our decision.
Garry, P.J., Fisher, McShan and Mackey, JJ., concur.
ORDERED that the amended decision is modified, without costs, by reversing so much thereof as found that claimant was required to demonstrate an ongoing attachment to the labor market in WCB No. 80016443; matter remitted to the Workers' Compensation Board for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.

Footnotes

Footnote 1: Due to claimant's return to work in 2009, there were also no awards made for lost time from August 3, 2009 to January 11, 2011.

Footnote 2: Claimant does not challenge the Board's determination that she failed to produce sufficient evidence of her attachment and/or reattachment to the labor market in Claim No. 2. Rather, claimant's argument is limited to her position that the Board's amended decision in Claim No. 2 on labor market attachment was incorrectly applied to Claim No. 1. Claimant further represents that Claim No. 2 has been resolved under a settlement agreement made pursuant to a Workers' Compensation Law § 32 agreement.

Footnote 3: "This does not mean, however, that there is no limit to retroactive application of the amendment, as there are different degrees of retroactivity[, and] . . . the amendment does not necessarily retroactively apply to all claimants previously classified as permanently partially disabled, relieving them of the obligation to show labor market attachment regardless of the procedural posture of their claim" (Matter of Scott v Visiting Nurses Home Care, 172 AD3d at 1871 [internal quotation marks, emphasis and citations omitted]). Where, for example, there is a finding prior to the amendment that a claimant had voluntarily withdrawn from the labor market, or otherwise failed to show attachment when required to do so, the Board may properly decline to retroactively apply the amendment to relieve a claimant of the obligation of demonstrating ongoing labor market attachment (see Matter of Digbasanis v Pelham Bay Donuts Inc., 224 AD3d at 1048; Matter of Santos v Brickens Constr. Inc., 175 AD3d 1742, 1743 [3d Dept 2019]; Matter of Pryer v Incorporated Vil. of Hempstead, 175 AD3d 1663, 1665 [3d Dept 2019]; Matter of Scott v Visiting Nurses Home Care, 172 AD3d at 1872).