■ ·In the Matter of the Claim of MITCHELL A. YOUNG, Respondent, v CERAMIC TILE CONTRACTORS et al., Appellants. WORKERS' COMPENSATION BOARD, Respondent. [732 NYS2d 652] —Carpinello, J. Appeals from a decision and amended decision of the Workers' Compensation Board, filed April 27, 2000 and December 5, 2000, which ruled, *inter alia,* that the employer's workers' compensation carrier was responsible for certain repairs to claimant's residence.

On December 23, 1989, claimant suffered a severe back injury for which accident, notice and causal relationship were established in 1990. Claimant's injury, which required a series of extensive surgeries including the implantation of steel rods in his back, ultimately resulted in a finding of permanent total disability. In late 1996, claimant's treating physician recommended that a whirlpool be installed in his home to lessen his chronic pain thereby reducing the need for narcotic drugs. This physician opined that whirlpool therapy was medically necessary for claimant. By decision filed March 6, 1998, the Workers' Compensation Board authorized the installation of an inhouse therapeutic whirlpool and a handicap accessible shower. Significantly, the employer's workers' compensation carrier never appealed from this decision.

In May 1998, the carrier retained the services of an architect to design the renovations and to act as the general contractor on the project. The architect was authorized to obtain bids and to hire all necessary subcontractors. The carrier retained the right to approve all design drawings, as well as all labor and

material costs. Suffice it to say, problems arose after commencement of the project. The addition that housed the whirlpool was not properly isolated from the original structure, thereby allowing moisture to enter the home and cause significant damage to the master bedroom, eventually permitting a biohazardous fungus to grow. In November 1999, the case was reopened to resolve the issue of who was responsible for correcting the defective work, the carrier taking the position at the ensuing hearing that claimant was responsible for pursuing any claims against the architect and the subcontractors and claimant essentially taking the position that the carrier was responsible. Another dispute also arose concerning the carrier's obligation to pay for previously-approved transportation services for claimant. As of 1997, a limousine company had been authorized by the carrier to provide transportation for claimant in a specially-equipped vehicle. In 1999, however, the carrier refused to pay certain invoices because they did not include sufficient documentation of medical treatment and, by 2000, the limousine company had closed claimant's account for failure to pay.

In an April 27, 2000 decision, the Board affirmed the Workers' Compensation Law Judge's determination that the carrier was liable for the necessary repairs to claimant's home and also obligated to pay for limousine transportation for claimant in lieu of an ambulance. The carrier appeals from this decision as well as a December 5, 2000 amended decision of the Board which limited claimant's use of the specially equipped vehicle for transport to medical appointments, the pharmacy and Board hearings.

Addressing the April 2000 decision first, the carrier contends that the Board "abused its discretion" in determining that it is responsible for the damages to claimant's home. Workers' Compensation Law § 13 (a) requires that "the employer [or the carrier] shall promptly provide for an injured employee such medical, surgical, optometric or *other attendance or treatment* * * * for such period as the nature of the injury or the process of recovery may require" (emphasis supplied). The phrase "other attendance or treatment" has been broadly construed "to accomplish [the] economic and humanitarian objects" of the Workers' Compensation Law (*Matter of Morrell v Onondaga County*, 244 AD2d 695, 697; *see, Matter of Weingarten v Pathmark Stores*, 256 AD2d 648, 650). Notably, modifications to an injured claimant's residence to accommodate medically required devices clearly fall within this category (*see, Matter of Dixon v State Univ. Coll.*, 283 AD2d 840; *Matter of Langford v*

*William Rogers, Inc.*, 144 AD2d 785). Here, the carrier exercised, or at least had the right to exercise, sufficient control over the project such that it should be held responsible for any damage to claimant's home caused by the renovations. As the record indicates that, prior to construction, the carrier approved the proposed addition housing the whirlpool and was kept apprised of all phases of construction as it occurred, substantial evidence supports the Board's determination that the carrier pay for the clean-up of the biohazard and for the repair of any defective labor (*see, 300 Gramatan Ave. Assocs. v State Div. of Human Rights*, 45 NY2d 176).

Turning next to the December 2000 amended decision, the carrier argues that the Board exceeded its authority by awarding claimant the use of the specially equipped vehicle for transportation purposes, supposedly without exploring less expensive alternatives. It is well settled that an injured employee is entitled to transportation to and from medical care (*see, Matter of Morrell v Onondaga County, supra*; *Matter of Simpson v Glen Aubrey Fire Co.*, 86 AD2d 909, 910). The Board found that the specially equipped vehicle was a less expensive alternative than traveling by ambulance, claimant's previous authorized method of transportation. Consequently, this determination is also supported by substantial evidence in the record and must be affirmed.

Cardona, P. J., Mercure, Spain and Mugglin, JJ., concur. Ordered that the decision and amended decision are affirmed, with costs.