Matter of Forte v Muccini (2020 NY Slip Op 01881)





Matter of Forte v Muccini


2020 NY Slip Op 01881


Decided on March 16, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 16, 2020

529286

[*1]In the Matter of the Claim of Chris Forte, Appellant,
v
Ernest Muccini et al., Respondents. Workers' Compensation Board, Respondent.

Calendar Date: February 20, 2020

Before: Clark, J.P., Mulvey, Aarons, Pritzker and Reynolds Fitzgerald, JJ.


John F. Clennan, Ronkonkoma, for appellant.
Fischer Brothers, New York City (Martin Krutzel of counsel), for respondents.



Reynolds Fitzgerald, J.
Appeal from a decision of the Workers' Compensation Board, filed December 7, 2018, which, among other things, directed that claimant be weaned from his narcotic prescription medications in accordance with the report of the independent medical examiner.
Claimant injured his back while performing manual labor at an automotive body repair shop and filed a claim for workers' compensation benefits. His claim was established for an occupational disease of the back with a date of disablement of June 1, 2003 and he was found to have a permanent partial disability. Claimant sought medical treatment for his condition and underwent back surgery in 2005, at which time he was prescribed narcotic medications for pain. For many years thereafter, he continued to seek medical treatment for chronic pain, was prescribed various types of opioid medications and was diagnosed with opioid dependence in 2015. Following further proceedings in claimant's workers' compensation case, a Workers' Compensation Law Judge (hereinafter WCLJ) amended the claim to include consequential arachnoiditis, a pain disorder caused by inflammation of the membranes that surround and protect the nerves of the spinal cord, for which there is no medical treatment. During these proceedings, the employer's workers' compensation carrier requested the WCLJ to direct that claimant be weaned from opioid medications based upon the medical opinion of an independent medical examiner (hereinafter IME), who conducted a pharmacological chart review of claimant's medications and determined that weaning was appropriate based upon the Workers' Compensation Board's Non-Acute Pain Medical Treatment Guidelines (see 12 NYCRR 324.2 [a] [6]. The WCLJ issued a decision denying this request and directed the carrier to continue to cover the cost of claimant's medications. The employer and the carrier sought review of this part of the WCLJ's decision by the Workers' Compensation Board. The Board modified the WCLJ's decision and directed that claimant be weaned from his narcotic medications in accordance with the weaning program devised by the IME. Claimant appeals.
Initially, this Court has recognized that "[t]he Board has the authority to promulgate medical treatment guidelines defining the nature and scope of necessary treatment" for various types of medical conditions (Matter of Gasparro v Hospice of Dutchess County, 166 AD3d 1271, 1272 [2018] [internal quotation marks and citation omitted]; see Matter of Kigin v State of N.Y. Workers' Compensation Bd., 24 NY3d 459, 463 [2014]; Matter of Czechowski v MCS Remedial Servs., 175 AD3d 1759, 1760-1761 [2019]). The guidelines relevant here are those governing the treatment of non-acute pain. They define non-acute pain as "a biopsychosocial process that is recognized as occurring at which time the patient reports enduring pain that persists beyond the anticipated time of recovery and results in concurrent functional limitations" (State of New York Workers' Compensation Board Non-Acute Pain Medical Treatment Guidelines, at 8 [Sept. 2014]). The guidelines take a multidisciplinary approach to pain management, taking into account "[t]herapeutic components such as pharmacologic, interventional, psychological and physical . . . performed in an integrated manner" that is "focused on the goal of functional restoration rather than merely the elimination of pain" (State of New York Workers' Compensation Board Non-Acute Pain Medical Treatment Guidelines, at 13 [Sept. 2014]). For patients who have used opioids for a long period of time prior to the enactment of the guidelines, "the goal is to transition to the standards of care identified [in the guidelines] and avoid abrupt discontinuation of opioids" (State of New York Workers' Compensation Board Non-Acute Pain Medical Treatment Guidelines, at 44 [Sept. 2014]). In accordance therewith, the guidelines authorize and set forth a protocol for opioid weaning (see State of New York Workers' Compensation Board Non-Acute Pain Medical Treatment Guidelines, at 66-67 [Sept. 2014]). They also set forth the standards that should be followed when administering opioids, limiting the total daily dose in general to 100 mg of the morphine equivalent dose (hereinafter MED) (see State of New York Workers' Compensation Board Non-Acute Pain Medical Treatment Guidelines, at 62 [Sept. 2014]).
Claimant contends that the Board erroneously relied upon the opinion of the IME in directing that he be weaned from his opiate medications instead of the opinion of his treating physician. We disagree. At the time of the proceedings before the WCLJ, it was established that claimant was taking opioids consisting of 100 mg of fentanyl via a transdermal patch every 72 hours (MED 720), 200 mg of MS Contin, a form of morphine, taken orally every six hours (MED 800) and 1,200 mg of Actqi, a fentanyl lollipop, taken orally every four hours (MED 900). It is undisputed that the amount of opioids claimant was taking was nearly 2,500 mg of MED, far in excess of the 100 mg of MED set forth in the above guidelines. Claimant's treating physician acknowledged this, but stated that claimant had been tolerant to a high dosage of opioids over a long period of time and warned that weaning him could result in increased blood pressure and other medical problems. He stated that claimant suffers pain at the level of seven or eight even with his medications and did not indicate that claimant's functionality had improved with the use of high dose opiates. In addition, he indicated that he had previously reduced the dosage of Actqi, but that claimant did not tolerate it well and needed an increase in the fentanyl patch to compensate. Consequently, he did not believe that it is was necessary to follow the weaning protocol set forth in the guidelines, opting instead to follow his own tapering regiment.
The IME, however, stated that the use of a high dose of opioids, particularly in the amounts taken by claimant, posed an increased risk of morbidity and mortality. He acknowledged that claimant had a significant amount of pain, but opined that there was no reason to provide medications with a MED exceeding 2,000 when the same amount of pain could be managed with smaller and safer doses, or in other ways. He suggested a gradual reduction in opioids with reassessment on a regular basis. Accordingly, he recommended a weaning program starting with a reduction in Actiq over the course of three or four months under close medical supervision, after which claimant would be reassessed, and the fentanyl patch would then be reduced over the course of the following four or five months.
Although claimant's physician and the IME gave differing opinions regarding the advisability of weaning claimant from his opiate medications, as well as the manner in which it should be accomplished, the Board is vested with the authority to resolve conflicting medical opinions (see Matter of Czechowski v MCS Remedial Servs., 175 AD3d at 1761; Matter of Bland v Gellman, Brydges & Schroff, 151 AD3d 1484, 1488 [2017], lv dismissed, in part, lv denied, in part, 30 NY3d 1035 [2017]). Thus, the Board could choose to credit the opinion of the IME, which was in accordance with the applicable guidelines, over that of claimant's treating physician. Therefore, inasmuch as substantial evidence supports the Board's decision, we find no reason to disturb it (see e.g. Matter of Gasparro v Hospice of Dutchess County, 166 AD3d 1271, 1274 [2018]; cf. Matter of Madigan v ARR ELS, 126 AD3d 1262, 1263 [2015]). Claimant's reliance upon the presumption contained in Workers' Compensation Law § 21 does not compel a contrary result.
Clark, J.P., Mulvey, Aarons and Pritzker, JJ., concur.
ORDERED that the decision is affirmed, without costs.