Matter of Quigley v Village of E. Aurora (2021 NY Slip Op 01174)





Matter of Quigley v Village of E. Aurora


2021 NY Slip Op 01174


Decided on February 25, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 25, 2021

530353

[*1]In the Matter of the Claim of Daniel Quigley, Respondent,
v
Village of East Aurora et al., Appellants. Workers' Compensation Board, Respondent.

Calendar Date: January 12, 2021

Before: Garry, P.J., Egan Jr., Lynch, Aarons and Pritzker, JJ.


Hamberger & Weiss LLP, Buffalo (Vivian A. Washington of counsel), for appellants.
Lewis & Lewis, PC, Jamestown (Michael Panebianco of counsel), for Daniel Quigley, respondent.
Letitia James, Attorney General, New York City (Nina M. Sas of counsel), for Workers' Compensation Board, respondent.



Egan Jr., J.
Appeal from a decision of the Workers' Compensation Board, filed May 20, 2019, which, among other things, granted claimant's request for a variance.
Claimant, a police officer, has two established workers' compensation claims — one involving a concussion and injuries to his right wrist and elbow (later amended to include his right shoulder) stemming from a February 2004 incident where he slipped and fell on black ice while at work, and the other involving a 1998 work-related injury to his low back. Following years of treatment, which included physical therapy, surgeries and various prescription pain medications, and a subsequent diagnosis of chronic regional pain syndrome of the right upper extremity, a Workers' Compensation Law Judge classified claimant as permanently partially disabled in 2009 and apportioned liability for indemnity benefits and medications between the two claims. Claimant continued receiving treatment with varying degrees of success, and his use of prescription pain medications continued to increase.
In October 2016, claimant, who for years had been treated with opiate pain medications,[FN1] began treating with pain management specialist Cheryl Hart. Hart continued claimant on his regimen of, among other medications, Oxycontin and Oxycodone to treat his pain; however, in May 2018, she certified claimant for use of medical marihuana pursuant to Public Health Law article 33, title V-a, also referred to as New York's Compassionate Care Act. In September 2018, Hart filed an MG-2 variance form requesting authorization to use medical marihuana to treat claimant's chronic pain resulting from his work-related injuries. The employer and its workers' compensation carrier denied the request, prompting claimant to seek review from the Workers' Compensation Board. The Board initially upheld the denial but, after claimant requested further action, the Board canceled its decision and continued the case for a hearing. Following a hearing, a Worker's Compensation Law Judge approved the variance request for medical marihuana treatment as apportioned, and, as relevant here, instructed the carrier to pay for such treatment. Upon administrative review, the Board, among other things, upheld the request for the variance. The employer and the carrier appeal.
The employer and the carrier contend that, inasmuch as marihuana is a Schedule I drug under the Controlled Substances Act (see 21 USC § 812 [c]) — which makes "the manufacture, distribution, or possession [there]of" a criminal offense, unless used in connection with a research study approved by the Food and Drug Administration (Gonzales v Raich, 545 US 1, 14 [2005]) — the requirement that the carrier provide insurance coverage for claimant's medical marihuana expenses under the Compassionate Care Act conflicts with the Controlled Substances Act and, in light thereof, the Compassionate Care Act is preempted by federal law. We disagree. "The federal preemption doctrine has its roots in [*2]the Supremacy Clause of the United States Constitution, and federal preemption of state laws generally can occur in three ways: where Congress has expressly preempted state law, where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law, or where federal law conflicts with state law" (Matter of Atlas Van Lines, Inc. v Tax Appeals Trib. of the State of N.Y., 123 AD3d 168, 174 [2014] [internal quotation marks, ellipsis, brackets and citations omitted], lv denied 24 NY3d 915 [2015]; see Sutton v 58 Assoc. LLC v Pilevsky, ___ NY3d ___, ___, 2020 NY Slip Op 06939, *4 [2020]; Matter of Schwenger v NYU Sch. of Medicine, 126 AD3d 1056, 1057-1058 [2015], lv dismissed 26 NY3d 962 [2015]). At issue here is conflict preemption, "which occurs when compliance with both federal and state law is a physical impossibility, or where the state law at issue . . . stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" (Matter of Atlas Van Lines, Inc. v Tax Appeals Trib. of the State of N.Y., 123 AD3d at 174 [internal quotation marks and citation omitted]; see Balbuena v IDR Realty LLC, 6 NY3d 338, 356 [2017]).
Although there is no dispute that marihuana is a Schedule I drug such that it is a criminal offense under the federal Controlled Substances Act to manufacture, distribute or possess it (see Gonzales v Raich, 545 US at 14), we note that this Act does provide an exception for certain other controlled substances where the substance "was obtained directly, or pursuant to a valid prescription or order, from a practitioner, while acting in the course of his [or her] professional practice" (21 USC § 844 [a]; see 21 USC 841 [a] [1]). Importantly, neither the Compassionate Care Act nor Workers' Compensation Law § 13 (a) requires a workers' compensation carrier to manufacture, distribute or possess marihuana. Rather, pursuant to the Compassionate Care Act, the carrier is merely required to reimburse a claimant for the monetary costs associated with the medical marihuana that he or she obtains from his or her medical practitioner, an activity that is not expressly prohibited under the Controlled Substances Act. Moreover, requiring the carrier to reimburse claimant for said expenses does not serve to subvert, in any way, the principal purposes of the Controlled Substances Act in combating drug abuse and controlling "the legitimate and illegitimate traffic in controlled substances" (Gonzales v Raich, 545 US at 12 [footnote omitted]), particularly where, as here, claimant was validly prescribed and authorized to use medical marihuana by his pain management specialist to both treat his chronic pain and reduce his reliance on opiates.
Nor are we persuaded by the employer and the carrier's claim that compelling the carrier to "fund" claimant's use of medical marihuana under the Compassionate Care Act exposes it to civil and criminal liability [*3]under the auspices of "conspiracy or aiding or abetting." Importantly, "[t]he existence of a hypothetical or potential conflict is insufficient to warrant the preemption of [a] state statute" (Rice v Norman Williams Co., 458 US 654, 659 [1982]; accord Long Is. Light. Co. v Mack, 137 AD2d 285, 296 [1988], appeal dismissed 74 NY2d 804 [1989]; see Hager v M & K Construction, 462 NJ Super 146, 164, 225 A3d 137, 147 [2020]). Further, even assuming, without deciding, that claimant's procurement and possession of medical marihuana under the Compassionate Care Act is illegal under the Controlled Substances Act, any such criminal transaction in this regard is necessarily completed prior to any request being made for reimbursement from the carrier; thus, as "one cannot aid and abet a completed crime," under such circumstances, the carrier cannot be said to be aiding and abetting a crime and/or engaging in a conspiracy to commit same (Hager v M & K Construction, 462 NJ Super at 166, 225 A3d at 148 [internal quotation marks and citations omitted]). Accordingly, as the carrier can comply with the state's statutory scheme without running afoul of federal law, we do not find any conflict between the Controlled Substances Act and either the Compassionate Care Act or Workers' Compensation Law § 13 (a) with regard to the carrier's obligation to reimburse claimant for his medical marihuana expenses (see Hager v M & K Construction, 462 NJ Super at 164-165, 225 A3d at 147-148).
Next, the employer and the carrier argue that they are statutorily exempt from liability for claimant's medical marihuana expenses under Public Health Law § 3368 (2). When dealing with matters of statutory interpretation, "[the] primary consideration is to discern and give effect to the Legislature's intention" (Matter of Albany Law School v New York State Off. of Mental Retardation & Dev. Disabilities, 19 NY3d 106, 120 [2012]). In that regard, "[t]he statutory text is the clearest indicator of legislative intent and courts should construe unambiguous language to give effect to its plain meaning" (Matter of DaimlerChrysler Corp. v Spitzer, 7 NY3d 653, 660 [2006]; see Matter of Minichiello v New York City Dept. of Homeless Servs., 188 AD3d 1401, 1402 [2020]). "[W]here a law expressly describes a particular act, thing or person to which it shall apply, an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded" (McKinney's Cons Laws of NY, Book 1, Statutes § 240; see Kimmel v State of New York, 29 NY3d 386, 394 [2017]; Walker v Town of Hempstead, 84 NY2d 360, 367 [1994]).
Preliminarily, we note that, pursuant to Workers' Compensation Law § 13 (a), the employer is liable "for the payment of the expenses of medical, dental, surgical, optometric or other attendance or treatment, nurse and hospital service, [and] medicine . . . for such period as the nature of the injury or the process of recovery may require." The Court of Appeals has [*4]broadly interpreted the term "other attendance or treatment" in such a manner as to give effect to the "fundamental principle that the Workers' Compensation Law is to be liberally construed to accomplish the economic and humanitarian objects of the act" (Matter of Smith v Tompkins County Courthouse, 60 NY2d 939, 941 [1983]; see also Matter of Young v Ceramic Tile Contrs., 288 AD2d 570, 571 [2002]).
Amidst this backdrop, at issue here is Public Health Law § 3368 (2), which provides that "[n]othing in this title shall be construed to require an insurer or health plan under [the Public Health Law] or the [I]nsurance [L]aw to provide coverage for medical marihuana. Nothing in this title shall be construed to require coverage for medical marihuana under [Public Health Law article 25 (maternal and child health)] or [Social Services Law article 5 (public assistance)]." According to its express terms, the provided exemption from coverage for medical marihuana expenses pertains only to three chapters of law: the Public Health Law, the Insurance Law and the Social Services Law. No reference is made in the text of the statute to an exemption from coverage under the Workers' Compensation Law. If the Legislature intended for said exemption to apply to workers' compensation insurance carriers, it certainly could have included such language in the text of the statute; it chose not to.
Additionally, although the term "insurer" is not defined under either the Public Health Law (see Public Health Law § 2) or the Insurance Law (see Insurance Law § 107), the Workers' Compensation Law draws a distinction between "an insurer or health benefits plan" and an employer or its workers' compensation carrier, providing that, "[i]n the event that an insurer or health benefits plan makes payment for medical and/or hospital services for or on behalf of an injured employee[,] they shall be entitled to be reimbursed for such payments by the carrier or employer within the limits of the . . . fee schedules if the [B]oard determines that the claim is compensable" (Workers' Compensation Law § 13 [d] [1]; see Matter of WDF, Inc., 2018 NY Wrk Comp LEXIS 1573, *6-7 [WCB No. G1403803, Feb. 16, 2018]). In consideration of this distinction and given the economic and humanitarian purposes underlying the Workers' Compensation Law, coupled with the fact that a plain language reading of Public Health Law § 3368 (2) reveals that no exemption for workers' compensation carriers was provided for in the statute, it is apparent that the Legislature did not intend to exempt workers' compensation carriers from the obligation to reimburse injured claimants for their medical marihuana expenses (see Matter of WDF, Inc., 2018 NY Wrk Comp LEXIS 1573 at *6-7).[FN2] Accordingly, we find that Public Health Law § 3368 (2) does not exempt the carrier from liability for same.
Lastly, we find that the Board properly granted claimant's request for a variance. The Public Health Law and its accompanying regulations [*5]authorize the use of medical marihuana to treat certain enumerated and serious conditions, including — as relevant here — chronic pain (see Public Health Law §§ 3360 [7] [a]; 3362; 10 NYCRR 1004.2 [a] [8] [xi]).[FN3] The Workers' Compensation Law also requires that treatment be rendered in accordance with its Medical Treatment Guidelines (see 12 NYCRR 324.2 [a]; Matter of WDF, Inc., 2018 NY Wrk Comp LEXIS 1573 at *7). Where, as here, a treating medical provider determines that medical care that varies from the Medical Treatment Guidelines is warranted, he or she "shall request a variance from the insurance carrier" by submitting such request in the prescribed form (12 NYCRR 324.3 [a] [1]). "The burden of proof to establish that a variance is appropriate for the claimant and medically necessary shall rest on the [t]reating [m]edical [p]rovider requesting the variance" (12 NYCRR 324.3 [a] [2]; see Matter of Kigin v State of N.Y. Workers' Compensation Bd., 24 NY3d 459, 468 [2014]; Matter of Bland v Gellman, Brydges & Schroff, 151 AD3d 1484, 1487 [2017], lv dismissed and denied 30 NY3d 1035 [2017]).[FN4] Ultimately, if the Board's decision is supported by substantial evidence, we will not disturb it (see Matter of Forte v Muccini, 181 AD3d 1135, 1138 [2020], lv denied 35 NY3d 912 [2020]).
In support of the variance request, Hart submitted, among other things, her August 2018 report, detailing claimant's history of chronic and severe upper right extremity pain as a result of his February 2004 work-related injury, the functional limitations associated therewith and the impact that this has had on his activities of daily living, including limitations on his ability to drive, bathe, dress and perform household chores. Hart indicated that claimant had suffered from chronic pain as a result of this injury for more than three months since same and documented the history of claimant's prior surgeries and treatments, including injections, physical therapy, aqua therapy, a home exercise program and use of a TENS unit and scooter, noting the limited therapeutic benefit that they had provided to date. Hart also documented claimant's longstanding use of opiate pain medication and his improvement in pain relief, energy and mood following the introduction of medical marihuana to his treatment regimen, and she listed the functional improvements that she expected him to continue experiencing by treating with medical marihuana. She further noted claimant's desire to reduce the use of opioid pain medication and reiterated that the goal was to get claimant "off of the opioids." Having reviewed Hart's detailed and specific report, we find that the Board's decision to grant the requested variance to treat claimant's chronic pain with medical marihuana is supported by substantial evidence and, as such, we decline to disturb it.
Garry, P.J., Lynch, Aarons and Pritzker, JJ., concur.
ORDERED that the decision is affirmed, without costs.



Footnotes

Footnote 1: Opiate pain medications are classified as Schedule II drugs under the Controlled Substances Act (see 21 USC § 812 [c]).

Footnote 2: This holding also comports with the legislative history of Public Health Law § 3368 (see Governor's Program Bill No. 57, Bill Jacket, L 2014, ch 90 at 3; Senate Introducer's Mem in Support, Bill Jacket, L 2014, ch 90 at 3; Assembly Mem in Support, Bill Jacket, L 2014, ch 90 at 3).

Footnote 3: Under 10 NYCRR 1004.2 (a) (8) (xi), one of the requirements for being treated with medical marihuana is that the patient suffers from "any severe debilitating pain that the practitioner determines degrades health and functional capability; where the patient has contraindications, has experienced intolerable side effects, or has experienced failure of one or more previously tried therapeutic options; and where there is documented medical evidence of such pain having lasted three months or more beyond onset, or the practitioner reasonably anticipates such pain to last three months or more beyond onset."

Footnote 4: Although the Board has rejected variance requests where, as here, the claimant began treating with medical marihuana prior to the submission of the variance (see 12 NYCRR 324.3 [a] [1] [ii]; [b] [2] [i] [b]; Matter of Kluge v Town of Tonawanda, 176 AD3d 1370, 1371 [2019]; Employer: Hard Manufacturing Co. Inc., 2018 WL 1749751, *2, 2018 NY Wrk Comp LEXIS 3269, *5 [WCB No. 8010 6520, Apr. 9, 2018]), the Board decided not to dismiss the subject variance request on this basis, citing claimant's reduction in pain, increased energy and decreased opioid use.