Matter of Matteliano v Trinity Health Corp. (2021 NY Slip Op 03097)





Matter of Matteliano v Trinity Health Corp.


2021 NY Slip Op 03097


Decided on May 13, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:May 13, 2021

531582
[*1]In the Matter of the Claim of Caitlyn Matteliano, Claimant,
v
Trinity Health Corporation et al., Appellants. Workers' Comensation Board, Respondent.

Calendar Date:April 27, 2021

Before:Garry, P.J., Egan Jr., Lynch and Colangelo, JJ.

Williams & Williams, Buffalo (Jared L. Garlipp of counsel), for appellants.
Letitia James, Attorney General, New York City (Marjorie S. Leff of counsel), for respondent.



Egan Jr., J.
Appeal from a decision of the Workers' Compensation Board, filed December 16, 2019, which granted a request for authorization of multi-lumbar fusion surgery and use of an external bone growth stimulator.
In 2015, claimant, a nurse assistant, was injured at work while assisting a patient back into bed, and her subsequent claim for workers' compensation benefits was established for injuries to her left knee and left leg. In February 2018, claimant was again injured while transferring a patient into a bed, and her ensuing claim for workers' compensation benefits was established for an injury to her lower back and included her prior established injuries to her left knee and left leg.[FN1] In January 2019, Franco Vigna, the orthopedic surgeon who had been treating claimant since March 2018, requested authorization from the employer's workers' compensation carrier to perform multi-level lumbar fusion surgery and for the use of an external bone growth stimulator. The requested surgery involved three stages: the first would be a lateral lumbar interbody fusion at L3-L4 and L4-L5, the second would be an anterior lumbar interbody fusion with interbody cages and anterior lumbar plates and screws at L5-S1, and the third would be a posteriorly instrumented fusion with pedicle screw placement and possible laminectomy from L3-S1. The employer and its workers' compensation carrier (hereinafter collectively referred to as the employer) subsequently denied the request for authorization of the surgery based upon the findings of Anthony Leone, who conducted an independent medical examination of claimant on behalf of the employer. Following a hearing, a Workers' Compensation Law Judge (hereinafter WCLJ) denied the request for authorization of the surgery. Upon administrative review, the Workers' Compensation Board approved the prior authorization request, finding that, because claimant had already undergone conservative treatment without success and has discogenic back pain and worsening degenerative disc disease, authorization of the surgery was appropriate under the applicable Medical Treatment Guidelines. The employer appeals.
We affirm. "Initially, it is well settled that [t]he Board has the authority to promulgate medical treatment guidelines defining the nature and scope of necessary treatment" (Matter of Czechowski v MCS Remedial Servs., 175 AD3d 1759, 1760 [2019] [internal quotation marks and citation omitted]; see Matter of Kigin v State of N.Y. Workers' Compensation Bd., 24 NY3d 459, 463 [2014]; Matter of Forte v Muccini, 181 AD3d 1135, 1136 [2020], lv denied 35 NY3d 912 [2020]). Whether a particular medical treatment is appropriate under the guidelines and should be authorized is a factual issue for the Board to resolve, and its determination in this regard will be upheld if supported by substantial evidence (see Matter of Quigley v Village of E. Aurora, 193 AD3d 207, 215 [2021]; Matter of Forte v Muccini, 181 AD3d at 1138; Matter of Czechowski v [*2]MCS Remedial Servs., 175 AD3d at 1761-1762; Matter of Oparaji v Books & Rattles, 147 AD3d 1165, 1166 [2017], lv denied 29 NY3d 918 [2017]).
The applicable guidelines here pertain to mid and lower back injuries where the suggested course of treatment is lumbar fusion surgery, which requires prior authorization (see State of New York Workers' Compensation Board, Mid and Low Back Injury Medical Treatment Guidelines at 66-69 [Sept. 2014]; see generally 12 NYCRR 324.2 [a] [1]; [d] [2] [i]). The guidelines provide, in relevant part, that lumbar fusion surgery, in general, "is recommended as a treatment for spinal stenosis when concomitant instability has been proven" and that it is not recommended "for spinal stenosis without instability" (State of New York Workers' Compensation Board, Mid and Low Back Injury Medical Treatment Guidelines at 67 [Sept. 2014]). Among other indications, the "lack of responsiveness or unsatisfactory response(s) to adequate conservative treatment over a minimum 6 to 8 week period that may or may not include an epidural steroid injection" should also be present before lumbar fusion surgery is recommended (State of New York Workers' Compensation Board, Mid and Low Back Injury Medical Treatment Guidelines at 67 [Sept. 2014]). In cases where there is no instability, lumbar fusion surgery may still be recommended as a treatment for degenerative disc disease or discogenic back pain "in selected patients for whom non-surgical management has failed to relieve symptoms and improve function" (State of New York Workers' Compensation Board, Mid and Low Back Injury Medical Treatment Guidelines at 68 [Sept. 2014]).
Here, the evidence before the Board contained conflicting medical narratives regarding whether, in light of claimant's condition, the requested surgery should be authorized under the guidelines. In support of the denial of the requested authorization, the employer offered the independent medical examination and report of Leone, who, upon examining claimant and reviewing her medical history, found that the requested three-stage lumbar fusion surgery was an "aggressive" procedure that was not appropriate for claimant who is still at a young age. Leone opined that, in June 2018, claimant underwent an unsuccessful L5-S1 laminotomy and discectomy to resolve lower extremity symptoms and that claimant has not had any pain management since that surgery. Leone also reported that the requested surgery was inappropriate at this time because claimant has no lumbar instability, no significant spinal stenosis and no significant herniation. Leone also expressed concern that the requested procedure could worsen claimant's condition in the long term and result in chronic pain, chronic opioid use and the need for future surgeries.
In support of his request for authorization of the lumbar fusion surgery, Vigna testified that claimant's prior 2018 surgery was performed only to alleviate her right leg symptoms and that it would not, nor [*3]was it intended to, mitigate claimant's lower back pain. Vigna noted that, although claimant has received conservative treatment consisting of massage therapy, pain management, physical therapy, chiropractic care and injections, those measures have not improved claimant's pain, as she continues to experience constant severe pain that affects her sleep, causes weakness in her legs and limits her ability to perform routine tasks of daily living. Vigna also indicated that, although claimant has no lumbar instability, claimant has three discs that are dried out (disc desiccation) and displaced at the L3-4, L4-5 and L5-S1 levels, that she has discogenic lower back pain and pressure on her nerve roots. In recommending the three-stage lumbar fusion surgery, Vigna explained that the condition of the subject discs is degenerative and progressively getting worse and that he does not envision claimant's condition improving without the surgery.
Presented with the divergent medical opinions of Leone and Vigna, the Board is vested with the inherent authority to resolve the conflicting medical evidence, and we must defer to the Board's findings in this regard (see Czechowski v MCS Remedial Servs., 175 AD3d at 1761; Matter of Oparaji v Books & Rattles, 147 AD3d at 1167). To that end, inasmuch as Vigna found that claimant is experiencing degenerative disc disease and discogenic back pain and that non-surgical conservative treatment has not improved her symptoms or functioning, we find that substantial evidence supports the Board's determination to authorize the requested lumbar fusion surgery under section E.4.a.vi of the guidelines (see Czechowski v MCS Remedial Servs., 175 AD3d at 1761; State of New York Workers' Compensation Board, Mid and Low Back Injury Medical Treatment Guidelines at 68 [Sept. 2014]).[FN2] Moreover, although the Board did not expressly discuss the request for the use of an external bone growth stimulator following the surgery, substantial evidence also supports its approval sub silentio of this request, as the record reflects that claimant is a smoker and the procedure involves fusion at more than one level (see State of New York Workers' Compensation Board, Mid and Low Back Injury Medical Treatment Guidelines at 68 [Sept. 2014]; see generally 12 NYCRR 324.2 [d] [2] [v]). To the extent that claimant's remaining contentions are properly before us, they have been considered and found to be either academic in light of our decision herein or without merit.
Garry, P.J., Lynch and Colangelo, JJ., concur.
ORDERED that the decision is affirmed, without costs.



Footnotes

Footnote 1: At the time that claimant's 2018 claim was established for an injury to her lower back, a Workers' Compensation Law Judge combined the established injuries from the 2015 claim with the 2018 claim.

Footnote 2: Given the passage of time since the instant request for authorization of the three-stage lumbar fusion surgery was made, along with the forceful statements and warnings contained in Leone's medical report, we note that, notwithstanding our decision herein, claimant remains entitled to decline the requested surgery and/or to obtain additional medical opinions regarding whether she should undergo the requested procedure at this time. In addition, we remind the parties that, if appropriate, they are entitled to introduce evidence indicating that "proof of a change in condition material to the issue is involved" (12 NYCRR 300.14 [a] [2]) and that the Board has continuing jurisdiction to revisit a prior determination (see Workers' Compensation Law § 123).