State of New York v Alfa Laval Inc. (2023 NY Slip Op 01034)

State of New York v Alfa Laval Inc.

2023 NY Slip Op 01034

Decided on February 23, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 23, 2023

534091
[*1]State of New York, Appellant,
v
Alfa Laval Inc., Respondent.

Calendar Date:January 11, 2023

Before:Clark, J.P., Pritzker, Reynolds Fitzgerald, Ceresia and McShan, JJ.

Letitia James, Attorney General, Albany (Owen Demuth of counsel), for appellant.
Hunton Andrews Kurth LLP, Richmond, Virginia (Alexandra B. Cunningham of counsel), for respondent.

Reynolds Fitzgerald, J.
Appeal from an order of the Supreme Court (Peter A. Lynch, J.), entered August 23, 2021 in Albany County, which granted defendant's motion to dismiss the complaint.
Defendant owned property in the City of Poughkeepsie, Dutchess County from 1887 through 1965 and operated a petroleum product storage and dispensing system and manufacturing plant during said time period. In 1968, the City became the owner of the property and permitted dumping thereon. In 1999, the City identified contamination on the property, including petroleum, and sought to remediate the property. Subsequently, the City sought and obtained funding from plaintiff for an environmental restoration project — a program that provides funding to municipalities to remediate "brownfield" properties to develop the property for commercial and recreational uses (see ECL art 56, title 5). From 2003 through 2016, the City and plaintiff worked together to remediate the property, with plaintiff expending over $9 million in remediation funds.
In 2021, plaintiff commenced this action, pursuant to Navigation Law article 12 (known as the Oil Spill Act), alleging that defendant was a petroleum discharger within the meaning of the act, and, as such, strictly liable for remediation costs. Prior to joining issue, defendant moved to dismiss the complaint pursuant to CPLR 3211 (a) (1) and (7), alleging that as plaintiff utilized Environmental Restoration Program funds (see ECL 56-0501) and not funds from the "Oil Spill Fund" (see Navigation Law § 179) to rehabilitate the property, it was barred from seeking recovery under the Navigation Law. Supreme Court granted defendant's motion, prompting this appeal.[FN1]
"The Legislature enacted the Oil Spill Act . . . to prevent the unregulated discharge of petroleum and to accomplish speedy, effective cleanups when spills occur" (State of New York v Getty Petroleum Corp., 89 AD3d 262, 264 [3d Dept 2011] [internal quotation marks and citation omitted]). The act does this by empowering the state "to control the transfer and storage of petroleum and to provide liability for damage sustained within this state as a result of the discharge of said petroleum" (Navigation Law § 170; see Navigation Law § 171). Under the Oil Spill Act, any person who has discharged petroleum is strictly liable for cleanup and remediation costs (see Navigation Law § 181 [1]; State of New York v C.J. Burth Servs., Inc., 79 AD3d 1298, 1301 [3d Dept 2010], lv dismissed 16 NY3d 796 [2011]). A municipality that receives funds for an environmental restoration project does so "as agent of the state with respect to the incurrence of eligible costs" (ECL 56-0507 [1]). "The state shall make all reasonable efforts to recover the full amount of any state assistance provided under this title through litigation brought under this section or other statute or under the common law" (ECL 56-0507 [2]).
"On a motion to dismiss pursuant to CPLR 3211 (a) (7) for failure to state a claim, this Court must afford [*2]the complaint a liberal construction, accept the facts as alleged in the pleading as true, confer on the nonmoving party the benefit of every possible inference and determine whether the facts as alleged fit within any cognizable legal theory" (Hilgreen v Pollard Excavating, Inc., 210 AD3d 1344, 1346 [3d Dept 2022] [internal quotation marks, brackets and citations omitted]; see County of Saratoga v Delaware Eng'g, D.P.C., 189 AD3d 1926, 1927 [3d Dept 2020]).
Supreme Court erred in granting respondent's motion to dismiss the complaint. Nothing in the Navigation Law prohibits plaintiff from seeking indemnification for funds expended from sources other than the Oil Spill Fund. Moreover, the Environmental Conservation Law requires the state to seek recovery of the funds under any statute (see ECL 56-0507 [2]). "When dealing with matters of statutory interpretation, the primary consideration is to discern and give effect to the Legislature's intention. In that regard, the statutory text is the clearest indicator of legislative intent and courts should construe unambiguous language to give effect to its plain meaning" (Matter of Quigley v Village of E. Aurora, 193 AD3d 207, 212 [3d Dept 2021] [internal quotation marks, brackets and citations omitted], lv denied 37 NY3d 908 [2021]; see Matter of Level 3 Communications, LLC v Clinton County, 144 AD3d 115, 117-118 [3d Dept 2016], lv denied 29 NY3d 918 [2017]).
The Legislature clearly set forth its intention by declaring "that the discharge of petroleum within . . . the jurisdiction of this state constitutes a threat to the economy and environment"; therefore, "[t]he [L]egislature intends by the passage of this article to exercise the powers of this state to control the transfer and storage of petroleum and to provide liability for damage sustained within this state as a result of the discharge of said petroleum" (Navigation Law § 170). The Legislature proclaimed the article's purpose as "to ensure a clean environment and healthy economy for the state by preventing the unregulated discharge of petroleum . . ., and by providing for liability for damage sustained within the state as a result of such discharges" (Navigation Law § 171).
The Legislature carried out the intent and purpose of the statute by broadly defining "[c]leanup and removal costs" as "all costs associated with the cleanup and removal of a discharge . . . incurred by the state or its political subdivisions or their agents or any person with approval of the department" (Navigation Law § 172 [5] [emphasis added]), and "[p]erson" to include, among others, "the state of New York and any of its political subdivisions or agents" (Navigation Law § 172 [14]). Additionally, the Legislature imposed strict liability against "[a]ny person who has discharged petroleum
. . . without regard to fault, for all cleanup and removal costs and all direct and indirect damages, no matter by whom sustained" (Navigation Law § 181 [1] [emphasis added]). The language [*3]of the statute does not limit recovery solely to the Oil Spill Fund. Rather, the fund simply serves as a possible means to effectuate the statute. "[B]arring plaintiff from seeking to hold defendant strictly liable for the [remediation] expenditures would thwart the plain language of Navigation Law § 181, as well as the express purposes of Navigation Law article 12 (see Navigation Law § 171)" and ECL 56-0507 (1) (State of New York v Ronney, 163 AD3d 1315, 1317-1318 [3d Dept 2018]).
Nor, contrary to Supreme Court's ruling, is notice required to be given to defendant prior to cleanup. Furthermore, as the investigative and remedial reports submitted here are not "documentary evidence" within the meaning of CPLR 3211 (a) (1), Supreme Court should not have relied upon them to dismiss the complaint (see Shanghai Yongrun Inv. Mgt. Co., Ltd v Maodong Xu, 203 AD3d 495, 495-496 [1st Dept 2022]; Fontanetta v John Doe 1, 73 AD3d 78, 86 [2d Dept 2010]; Webster v State of New York, 2003 NY Slip Op 50590[U], *4-5 [Ct Cl 2003]). Lastly, the presence of other contaminants does not preclude plaintiff's action under this section, as this relates to the extent and amount of damages and is not related to the question of defendant's liability under Navigation Law article 12 (see Novick v Sun Oil Co. of Pa., 103 AD2d 800, 801 [2d Dept 1984]).
"If the onus of cleanup falls on the Government, [the owner or operator at the time the discharge occurs] is the clearest and most expeditious source for reimbursement" (Matter of White v Regan, 171 AD2d 197, 201 [3d Dept 1991] [internal quotation marks and citation omitted], lvs denied 79 NY2d 754 [1992]). Liberally construing the complaint and the provisions of the statute, as we must on a motion to dismiss, Supreme Court improperly granted defendant's motion (see Hilgreen v Pollard Excavating, Inc., 210 AD3d at 1346; State of New York v C.J. Burth Servs., Inc., 79 AD3d at 1300).
Clark, J.P., Pritzker, Ceresia and McShan, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as granted defendant's motion dismissing the complaint; motion denied, except as to the second cause of action; and, as so modified, affirmed.

Footnotes

Footnote 1: At oral argument of the appeal, plaintiff withdrew its second cause of action seeking penalties. "It is well settled that a court's jurisdiction extends only to live controversies and, thus, an appeal will be considered moot unless the rights of the parties will be directly affected by the determination of the appeal and the interest of the parties is an immediate consequence of the [order]" (Owner Operator Ind. Drivers Assn., Inc. v Karas, 188 AD3d 1313, 1316 [3d Dept 2020] [internal quotation marks and citations omitted]).Accordingly, that part of plaintiff's appeal is moot (see Matter of NRG Energy, Inc. v Crotty, 18 AD3d 916, 918 [3d Dept 2005]).