Matter of Cannabis Impact Prevention Coalition, LLC v Hochul (2026 NY Slip Op 01573)

Matter of Cannabis Impact Prevention Coalition, LLC v Hochul

2026 NY Slip Op 01573

Decided on March 19, 2026

Appellate Division, Third Department

Fisher, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:March 19, 2026

CV-24-1706

[*1]In the Matter of Cannabis Impact Prevention Coalition, LLC, et al., Appellants,
vKathy Hochul, as Governor of the State of New York, et al., Respondents.

Calendar Date:January 7, 2026

Before: Aarons, J.P., Pritzker, Reynolds Fitzgerald and Fisher, JJ.

Tabner, Ryan & Keniry, LLP, Albany (Matthew D. Mosdell of counsel), for appellants.
Letitia James, Attorney General, Albany (Alexandria Twinem of counsel), for respondents.

Fisher, J.
Appeal from a judgment of the Supreme Court (James Ferreira, J.), entered September 20, 2024 in Albany County, which, among other things, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, granted respondents' motion to dismiss the second amended petition/complaint.
In March 2021, the Legislature passed the Marihuana Regulation and Taxation Act (hereinafter MRTA), which created the Cannabis Law (see L 2021, ch 92, § 2). This legislation legalized adult-use marihuana and further created respondent Cannabis Control Board (hereinafter CCB) and respondent Office of Cannabis Management (hereinafter OCM) to oversee and implement the new law (see Cannabis Law §§ 7, 8; see also L 2021, ch 92, § 16). As relevant here, OCM promulgated various regulations pertaining to medical marihuana (see 9 NYCRR part 113), adult-use packing and labeling (see 9 NYCRR part 128) and adult-use marketing and advertising (see 9 NYCRR part 129). Petitioners, a group of individuals and organizations whose members alleged harm from these regulations, commenced a hybrid CPLR article 78 proceeding and action for declaratory judgment in June 2023, seeking to annul 9 NYCRR parts 113, 128 and 129 and declare them as being preempted by the federal Controlled Substances Act (see 21 USC § 801 et seq. [hereinafter CSA]). Respondents moved, pre-answer, to dismiss on the grounds that the petition/complaint failed to state a cause of action. Supreme Court granted the motion, concluding, among other things, that the challenged regulations were not preempted by the CSA.[FN1] Petitioners appeal.[FN2]
The principles of federal preemption are rooted in the Supremacy Clause of the US Constitution (see US Const, art VI, cl 2), which "unambiguously provides that if there is any conflict between federal and state law, federal law shall prevail" (Gonzales v Raich, 545 US 1, 29 [2005]). Federal preemption of state laws can be either "by express statutory provision or through implication, the latter of which may be accomplished through either federal preemption of the field of a particular subject matter or the existence of an irreconcilable conflict between federal and state law" (Sutton 58 Assoc. LLC v Pilevsky, 36 NY3d 297, 305 [2020], cert dismissed ___ US ___, 142 S Ct 53 [2021]). Express and field preemption do not apply here, because the CSA explicitly leaves room for the state law to operate, "unless there is a positive conflict between that provision of this subchapter and that State law so that the two cannot consistently stand together" (21 USC § 903).
Under the principles of conflict preemption, a positive conflict exists "when compliance with both federal and state law is a physical impossibility, or where the state law at issue stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" (Matter of Quigley v Village of E. Aurora, 193 AD3d 207, 211 [3d Dept 2021] [internal quotation marks, ellipsis and citations [*2]omitted], lv denied 37 NY3d 908 [2021]). A party seeking to establish either form of conflict preemption faces a heavy burden, as "the mere fact of tension between federal and state law is generally not enough to establish an obstacle supporting preemption, particularly when the state law involves the exercise of traditional police power" (New York State Telecom. Assoc., Inc. v James, 101 F4th 135, 155 [2d Cir 2024] [internal quotation marks and citation omitted], cert denied ___ US ___, 145 S Ct 984 [2024]; see Scaletta v Michels Power, Inc., 236 AD3d 1, 5 [3d Dept 2025], appeal dismissed 43 NY3d 981 [2025]). To this point, a federal preemption challenge becomes "particularly weak where Congress has indicated its awareness of the operation of state law in a field of federal interest, and has nonetheless decided to stand by both concepts and to tolerate whatever tension there is between them" (Wyeth v Levine, 555 US 555, 575 [2009] [internal quotation marks, brackets and citation omitted]). Moreover, "the existence of a hypothetical or potential conflict is insufficient to warrant the pre-emption of a state statute" (Matter of Quigley v Village of E. Aurora, 193 AD3d at 212 [internal quotation marks, brackets and citation omitted]). Ultimately, the determination of whether a state law stands as an obstacle to the accomplishment of a federal objective requires a court "to consider the relationship between state and federal laws as they are interpreted and applied, not merely as they are written" (Jones v Rath Packing Co., 430 US 519, 526 [1977]).
Central to a court's preemption analysis is the congressional intent behind the federal law (see English v General Elec. Co., 496 US 72, 78-79 [1990]). As relevant here, "[t]he main objectives of the CSA were to conquer drug abuse and to control the legitimate and illegitimate traffic in controlled substances," of which "Congress was particularly concerned with the need to prevent the diversion of drugs from legitimate to illicit channels" (Gonzales v Raich, 545 US at 12-13). The CSA separates controlled substances into five schedules based on their accepted medical uses, risk of abuse and physical and psychological effects (see id. at 13). Substances on Schedule I, the strictest schedule, have been found to possess a "high potential for abuse, lack of any accepted medical use, and absence of any accepted safety for use in medically supervised treatment" (id.). Since the enactment of the CSA, marihuana has been classified as a Schedule I substance (see id.), "meaning that, subject to almost no exception, it is unlawful, under federal law, for any person to knowingly or intentionally manufacture, distribute, dispense or possess it" (Matter of Buenos Hill Inc. v Saratoga Springs Planning Bd., 240 AD3d 990, 990 [3d Dept 2025], appeal dismissed 44 NY3d 1015 [2025]).
With this backdrop, we turn to petitioners' contention that the challenged regulations promulgated under MRTA — which authorizes the sale, use and [*3]distribution of marihuana — create a positive conflict with the CSA prohibiting these exact actions. We find that no such conflict exists. Consistent with the main objectives of the CSA, the legislative intent behind MRTA was to, among other things, "regulate, control, . . . reduce the illegal drug market and reduce violent crime, reduce participation of otherwise law-abiding citizens in the illicit market . . . [and] protect the public health, safety and welfare of the people of the state" (Cannabis Law § 2). In doing so, the Legislature specifically provided that nothing in MRTA was "to require any individual to engage in any conduct that violates federal law or to exempt anyone from any requirement of federal law or pose any obstacle to the federal enforcement of federal law" (Cannabis Law § 2). Each of the challenged parts 113, 128 and 129 within title 9 of the NYCRR further these principles by regulating the legitimate and illegitimate handling of marihuana by setting specific restrictions on prescribers, manufacturers and retailers — including, as specifically challenged by petitioners, how medical and adult-use marihuana could be labeled, advertised and marketed (see e.g. 9 NYCRR 113.17, 128.5, 128.6, 129.2, 129.3). When considered through the lens of a conflict preemption analysis, although petitioners present several instances where they claim there is an impossibility between federal and state law, these are merely hypothetical or potential conflicts, as neither MRTA nor the challenged regulations pose any requirements on an individual or entity to manufacture, distribute or possess marihuana (see Matter of Quigley v Village of E. Aurora, 193 AD3d at 211-212; see also Botteon v Borough of Highland Park, 478 NJ Super 452, 466, 315 A3d 816, 824 [NJ App Div 2024]; In Re State Question No. 807, Initiative Petition No. 423, 2020 OK 57, 468 P3d 383, 391 [OK Sup Ct 2020]).
Nor can it be said that the challenged regulations stand as an obstacle to the accomplishment and execution of Congress' purpose in enacting the CSA, as MRTA expressly recognizes that it does not pose any bar on the enforcement of federal law (see Cannabis Law § 2). Indeed, the manufacture, possession and sale of marihuana remains subject to criminal sanction under federal law in most circumstances, and so too under state law in certain instances — including due to noncompliance with the challenged regulations (see Penal Law § 222.05;9 NYCRR parts 113, 128 and 129). Any perceived tension between the CSA and the challenged regulations under MRTA is further undermined by how the CSA has been applied, as "a majority of states now allow medical and/or recreational use of marihuana, and, over the past 20 years, the federal government has come to tolerate such local use, including by prohibiting federal funds from being used to prosecute individuals who comply with state laws authorizing same" (Matter of Buenos Hill Inc. v Saratoga Springs Planning Bd., 240 AD3d at 990-991 [internal [*4]quotation marks, brackets and citation omitted]; see Hager v M & K Constr., 246 NJ 1, 33, 247 A3d 864, 883 [2021] [describing the federal executive and legislative branches as having "muddied the waters between state mari(h)uana laws and federal enforcement"]; see also BUDR Holdings 5, LLC v Zoning Bd. of City of Stamford, 2025 WL 2778781, *4-5, 2025 Conn Super LEXIS 2602, *11-12 [Sept. 22, 2025, No. FST-CV-XX-XXXXXXX-S]; Botteon v Borough of Highland Park, 478 NJ Super at 465, 315 A3d at 824).[FN3] Such disconnect between the CSA and the federal government was further exhibited during the pendency of this appeal, as the Executive Branch issued an executive order calling for, among other things, the rescheduling of marihuana from Schedule I to Schedule III of the CSA (see Executive Order [Trump] No. 14370 [90 Fed Reg 60541]). Should such reclassification occur, it would formally complete the federal government's "piecemeal" departure from the way it has applied the CSA to marihuana since Raich (Standing Akimbo, LLC v United States, ___ US ___, ___, 141 S Ct 2236, 2238 [2021 Thomas, J., concurring]). Notwithstanding how the CSA remains written, we cannot say, based on how it has been applied by the federal government and specifically Congress, that the challenged regulations promulgated under MRTA represent an obstacle to the accomplishment of a fading federal objective (see Matter of Quigley v Village of E. Aurora, 193 AD3d at 211; see also Botteon v Borough of Highland Park, 478 NJ Super at 466-467, 315 A3d at 824-825).
Accordingly, Supreme Court properly granted respondents' motion and dismissed the petition/complaint. However, since Supreme Court reached the merits of petitioners' preemption challenge under its cause of action for a declaratory judgment, it should have entered a judgment making the appropriate declaration (see Grand S. Point, LLC v Bassett, 230 AD3d 49, 67-68 [3d Dept 2024], appeal dismissed 42 NY3d 1025 [2024], lv denied 43 NY3d 907 [2025]). We therefore modify the order by issuing a declaration that 9 NYCRR parts 113, 128 and 129 are not preempted by the CSA. We have examined the parties' remaining contentions, and have found them to be rendered academic, without merit or unpreserved.
Aarons, J.P., Pritzker and Reynolds Fitzgerald, JJ., concur.
ORDERED that the judgment is modified, on the law, without costs, by declaring that 9 NYCRR parts 113, 128 and 129 are not preempted by the federal Controlled Substances Act, and, as so modified, affirmed.

Footnotes

Footnote 1: Supreme Court also granted petitioners' cross-motion to amend the petition and complaint, which is not challenged on appeal.
Footnote 2: We find it unnecessary to address respondents' contentions related to an alternative ground for affirmance, which differ somewhat from what was raised before Supreme Court.

Footnote 3: Each Consolidated Appropriations Act (hereinafter CAA) passed by Congress from 2015 to 2023 included a provision that Congressional funds may not be used to prevent states from implementing their own medical marihuana laws (see CAA, 2015, Pub L 113-235 § 538; CAA, 2016, Pub L 114-113 § 542; CAA, 2017, Pub L 115-31 § 537; CAA, 2018, Pub L 115-141 § 538; CAA, 2019, Pub L 116-6 § 537; CAA, 2020, Pub L 116-93 § 531; CAA, 2021, Pub L 116-260 § 531; CAA, 2022, Pub L 117-103 § 531; CAA, 2023, Pub L 117-328 § 531). Notably, however, the CAA for 2024 did not contain such a provision (see CAA, 2024, Pub L 118-47). Rather, articulating a broader stance beyond just medical marihuana, a 2024 congressional report detailed the federal response to state legalization of marihuana as "allow[ing] states to implement their own laws" while still "reaffirm[ing] that mari[h]uana growth, possession, and trafficking remain crimes under federal law irrespective of states' mari[h]uana laws. Federal law enforcement has generally focused its efforts on criminal networks involved in the illicit mari[h]uana trade" (Congressional Research Report, The Federal Status of Marijuana and the Policy Gap with the States [May 2, 2024], https://www.congress.gov/crs-product/IF12270 [last accessed Mar. 16, 2026]).